**Roy L. GLENN and Anthony Joseph Liotta, Appellants,**

v.

**KINCO CRANE, INC., Rent–It Construction Services Company, and Grace Equipment Company, Appellees.**

No. 01–91–00079–CV.

Court of Appeals of Texas, Houston (1st Dist.).

June 11, 1992.

Rehearing Denied Oct. 8, 1992.

R.M. Sharpe, Robert C. Oliver, Lynne Liberato, Jeffery T. Nobles, Houston, for appellants.

Brock C. Akers, Houston, for appellees.

Before BASS, COHEN and PRICE,[1] JJ.

**1.** The Honorable Frank C. Price, former Justice, Court of Appeals, First District of Texas at Houston, sitting by assignment.

## OPINION

PRICE, Justice (Assigned).

This is an appeal from an action for personal injuries. After the jury found appellants' injuries were caused solely by the conduct of Lift–A–Loft Manufacturing, Inc., the trial court entered a judgment that appellants take nothing against the remaining defendants,[2] appellees.

On November 11, 1985, appellants were installing interior drywall sections at the Deauville Mall, then under construction in Kingwood, Harris County, Texas. They were injured when the scissors lift that they were working from collapsed and caused the two men to fall to the ground. At the time of the accident, appellants were employed by Hohle Drywall, the owner of the lift. Hohle is the successor-in-interest to Siptak Drywall Company, which purchased the lift from Smith Tool Company in 1979. Lift–A–Loft, one of the defendants in this suit, is the successor-in-interest to Smith Tool.

On the morning of trial, Lift–A–Loft settled with appellants. Under the terms of the agreement, appellants released Lift–A–Loft from potential liability in exchange for $400,000 and a guarantee that appellants would recover an additional $400,000 from appellees at trial. At the trial's conclusion, the jury found $1,232,956.50 would recompense appellants for the damages they had suffered and that Lift–A–Loft was solely liable.

In their first point of error, appellants contend the trial court erred in overruling their motion in limine which allowed appellees' counsel to refer improperly to a settlement agreement.

The motion in limine sought to exclude from the jury, knowledge about the settlement agreement between appellants and Lift–A–Loft. Appellants relied on this motion to preserve error, and consequently never objected when appellees' counsel made statements before the jury that the

**2.** Kinco Crane, Inc. and Rent-it Construction Services Company are subsidiaries of Grace Equipment Company.

settlement agreement indicated Lift–A–Loft was 100 percent responsible for appellants' injuries, and the present lawsuit was just an effort by appellants to acquire extra money.

Appellees maintain the statements regarding the settlement agreement were invited when appellants' attorney mentioned during voir dire that appellants had settled with Lift–A–Loft. Appellees further claim that any error caused by mentioning the settlement agreement was waived because a motion in limine does not preserve error, and appellants never objected to any of appellees' statements at the time they were made. Additionally, appellees argue that even if a motion in limine did preserve error, it failed in the present case because appellants never obtained a ruling on the motion in limine.

A complaint is preserved for appellate review by timely presentation to the trial court of a request, objection, or motion stating the specific grounds for the ruling desired. TEX.R.APP.P. 52(a). A complaint is not preserved for appellate review by a motion in limine. *Hartford Accident and Indem. Co. v. McCardell*, 369 S.W.2d 331, 335 (Tex.1963). If a motion in limine is overruled, the judgment will not be reversed unless the evidence is offered and an objection is made at that time. *Acord v. General Motors Corp.*, 669 S.W.2d 111, 116 (Tex.1984); *McCardell*, 369 S.W.2d at 335.

The only evidence in the record showing that the trial court ruled on the motion in limine is a post-trial affidavit made by appellants' trial counsel. Appellees dispute this fact in their brief. Because the record is silent, we assume the trial court did not rule on the motion. However, more compelling for our purposes in deciding this issue is appellants' failure to object on those occasions when appellees argued the significance of the settlement agreement to the jury. Because appellants failed to object, the error is not preserved for review. TEX.R.APP.P. 52(a).

Appellants' first point of error is overruled.

The remaining four points of error concern the factual sufficiency of the evidence to support the jury's findings. When an appellant challenges the factual sufficiency of the evidence to support an adverse finding, we consider and weigh all the evidence, both that in support of and contrary to the challenged finding. *Lofton v. Texas Brine Corp.*, 720 S.W.2d 804, 805 (Tex.1986). We must uphold the finding, unless we decide the finding is so against the great weight and preponderance of the evidence as to be manifestly erroneous or unjust. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661 (Tex.1951); *M.J. Sheridan & Son Co. v. Seminole Pipeline Co.*, 731 S.W.2d 620, 623 (Tex.App.—Houston [1st Dist.] 1987, no writ).

In points of error two and three, appellants contend the overwhelming weight of the evidence establishes appellees failed to warn, or take other action that might have prevented appellants' injuries. They argue appellees, as a supplier, are liable for the harm done by the lift because: (1) appellees placed the lift into the stream of commerce, and (2) the lift was unreasonably dangerous for its foreseeable use. *General Motors Corp. v. Hopkins*, 548 S.W.2d 344, 351 (Tex.1977).

In point of error four, appellants contend the jury's finding that Lift–A–Loft was 100 percent responsible for their injuries is against the overwhelming weight and preponderance of the evidence. In point of error five, appellants contend the jury's failure to find appellees grossly negligent is against the great weight and preponderance of the evidence.

The evidence in this case shows the lift was designed to be used as a platform for construction workers. Through its scissors-like extension system, the lift raised to a height of 20 feet. The arms of the extension system were connected at the pivotal point by a shaft. It was this shaft that failed and caused appellants' fall and injuries.

In 1979, Lift–A–Loft learned that some lifts were experiencing shaft failures. The problem arose when the shaft's maintenance-free bearings and pins failed. On

September 25, 1979, Lift–A–Loft sent notices to its customers regarding the shaft failures. The notice contained warnings to stop use of the lift until the shaft bearings and pins were tested. It further gave instructions on how to perform the test. If the unit failed the test, the lift was to be returned to Lift–A–Loft where it would be repaired for a flat fee of $575, or at no cost if the lift was still under warranty. The repairs consisted of replacing the maintenance-free bearings and pins with those having fittings that permitted periodic lubrication.

Appellees received notice of the lift's design defect, and Lift–A–Loft requested that appellees provide a current list of names, addresses, and phone numbers of all parties known to be operating the model lift in question. Appellees provided Lift–A–Loft with the names of some of its customers, including Siptak. There is conflicting evidence on whether appellees notified Siptak and Hohle about the problem, but the record reflects that Lift–A–Loft notified them both on at least four occasions. Siptak and Hohle attempted their own corrective action as a result of the warnings.

On February 18, 1983, Hohle purchased a greaseable shaft kit from SAFE–T–GREEN of Houston, Inc. Sometime thereafter, either Hohle or Siptak replaced the lift pins. The repairs were performed improperly. The pins were hammered into place with too much force, making it impossible to install grease fittings. It was after this attempt to repair the shaft that the lift failed.

▮ A party who supplies an end user with a defective product through an intermediary may warn the intermediary of the defect and rely on the intermediary to warn the end user. *Alm v. Aluminum Co.*, 717 S.W.2d 588, 591–92 (Tex.1986). However, the supplier must be sure the intermediary is familiar with the propensities of the product, and is thus capable of passing on a warning. *Id.* at 592.

In this case, Lift–A–Loft, upon discovering the defect, chose not to depend on the intermediary, appellees, to provide the warnings that the product was defective.

Lift–A–Loft decided to obtain the end users' names and warn them itself.

The jury found the design defect was the producing cause of appellants' injuries. The jury did not find appellees defectively marketed the lift by failing to give adequate warnings of the product's danger.

▮  As stated in *Alm*, the source of the warning of a design defect is not as significant as whether the warning is adequate. *Alm*, 717 S.W.2d at 592. The adequacy of the warning is a question of fact to be determined by the jury. *Id.* There is ample evidence in this record to support the jury's finding that the sole producing cause of appellants' injuries was the defectively designed product. There is also ample evidence that the appellants' employer was adequately warned of the potential dangers arising from the design defect.

Appellants' points of error two through five are overruled.

The judgment is affirmed.