Mary Lynn JOHNSON, Appellant,

v.

RANDALL'S FOOD MARKETS, INC., Mike Seals, Lewis Simmons, and Vernon Frank Davis, Appellees.

No. 01–92–1053–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Aug. 31, 1993.

Rehearing Denied Jan. 6, 1994.

Mark W. Stevens, Houston, for appellant.

Holly H. Williamson, Jay H. Henderson, Houston, for appellees.

Before SMITH, O'CONNOR and COHEN, JJ.

## OPINION

JACKSON B. SMITH, Jr., Justice[1].

This appeal concerns the propriety of a summary judgment granted to four defendants in a case involving allegations of conspiracy, slander, intentional infliction of emotional distress, "breach of contract and wrongful discharge," tortious interference with contract, and false imprisonment. We reverse and remand in part and affirm in part.

The plaintiff-appellant, Mary Lynn Johnson (Johnson), is a former manager of the Randall's grocery store in Galveston. The defendant-appellees are (1) Randall's Food Markets, Inc. (Randall's), the owner of the Galveston Randall's store (the store); (2) Mike Seals (Seals), the Randall's district manager whose district includes the store; (3) Lewis Simmons (Simmons), the store's director; and (4) Vernon Frank Davis (Davis), a clerk at the store.

The trial court granted summary judgment to the appellees on all claims asserted in Johnson's second amended petition. In point of error 12, Johnson argues that the trial court "erred in overruling plaintiff's motion for leave to amend, or alternatively in basing its decision on the basis of the second amended original complaint." Because this point of error presents the question of which petition the trial court should have considered to be the relevant petition for summary judgment purposes, we address this point first.

The summary judgment hearing was set for June 4, 1992, at 3 p.m. Approximately five minutes before the hearing, Johnson filed a "motion for leave to amend." The court proceeded with the summary judgement hearing without ruling on Johnson's motion.

The following day, Johnson filed her third amended petition, without leave of court. That petition included new factual allegations and two new causes of action.

On June 12, the trial court held a hearing on Johnson's motion for leave to amend, and on June 24 denied Johnson's motion, and ordered her third amended petition struck.

Rule 63 of the Texas Rules of Civil Procedure states in part:

[A]ny pleadings ... offered for filing within seven days of the date of trial or thereafter, or after such time as may be ordered by the judge under Rule 166, shall be filed only after leave of the judge is obtained, which leave shall be granted by the judge unless there is a showing that such filing will operate as a surprise to the opposite party.

Rule 166a(c) states that "[e]xcept on leave of court, the adverse party, not later than seven days prior to the day of hearing may file and serve ... other written response."

It is uncontested that the appellant never obtained leave of court to file her third amended petition. It is also uncontested that her third amended petition had not been filed at the time the defendants' motion for summary judgment was heard on June 4, .1992. Appellant did attempt to obtain leave of court to amend her pleadings a few minutes before the summary judgment hearing.

Unfortunately, we have nothing in our record to show what transpired at the June 4 summary judgment hearing or at the June 12 hearing on the plaintiff's "leave to amend" motion. Thus, we do not know what matters were presented or argued to the trial judge, and we do not know what facts the trial judge had to weigh and consider in making

1. The Honorable Jackson B. Smith, Jr., retired Justice, Court of Appeals, First District of Texas at Houston, sitting by assignment.

his decision on the appellant's motion to amend. We have only the motion itself and the plaintiff's third amended petition, which was filed after the hearing without permission and ordered struck by the court.

A summary judgment proceeding is a trial within the meaning of rule 63 and the Texas courts have given that rule liberal interpretation in granting leave to file late pleadings. *Goswami v. Metropolitan Savings & Loan Ass'n,* 751 S.W.2d 487, 490 (Tex.1988). However, when the record presented to us does not contain a transcript of what transpired at the hearings about which the appellant complains, we cannot and should not speculate as to the reasons why a trial judge made a certain decision. *See Glenn v. Kinco Crane, Inc.,* 836 S.W.2d 646, 648 (Tex.App.—Houston [1st Dist.] 1992, no writ).

The standard of review in determining whether a trial court erred in granting or denying a motion is abuse of discretion. *See Glenn,* 836 S.W.2d at 648. Under the record presented to us, we cannot say the trial court abused its discretion in refusing to grant leave to appellant to file her third amended petition.

We overrule point of error 12.

Johnson argues points of error one and two together. In point of error one, she contends that the trial court erred in granting summary judgment "as to allegations of defamation"[2] involving accusations that she stole a Christmas wreath from the store.

If the summary judgment proof does not establish, as a matter of law, that there are no genuine issues of material fact as to one or more of the essential elements of Johnson's cause of action, the summary judgment should be reversed. *See Gibbs v. General Motors Corp.,* 450 S.W.2d 827, 828 (Tex. 1970); *Palmer v. Liles,* 677 S.W.2d 661, 664 (Tex.App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.). When deciding whether such a fact issue exists, we take evidence favorable to Johnson, as the nonmoving party, as true,

and indulge every reasonable inference in her favor. *See Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548–49 (Tex. 1985); *Anders v. Mallard & Mallard, Inc.,* 817 S.W.2d 90, 93 (Tex.App.—Houston [1st Dist.] 1991, no writ). We resolve all doubts in her favor, as well. *See Nixon,* 690 S.W.2d at 549.

Texas courts have consistently held "slander" to be a defamatory statement that is orally communicated or published to a third person without legal excuse. *Diaz v. Rankin,* 777 S.W.2d 496, 498 (Tex.App.— Corpus Christi 1989, no writ); *Ramos v. Henry C. Beck Co.,* 711 S.W.2d 331, 333 (Tex.App.—Dallas 1986, no writ); *see Howell v. Hecht,* 821 S.W.2d 627, 630 (Tex.App.— Dallas 1991, writ denied); *Holloway v. Texas Medical Ass'n,* 757 S.W.2d 810, 814 (Tex. App.—Houston [1st Dist.] 1988, writ denied). Allegedly slanderous statements must be construed as a whole, in the light of surrounding circumstances, and based upon how a person of ordinary intelligence would perceive them. *Diaz,* 777 S.W.2d at 498–99. When the court determines that the language of which the plaintiff complains is ambiguous, a jury should be permitted to determine the statement's meaning and the effect the statement has on the ordinary listener. *Id.* at 499. That the allegedly defamatory statement is true is an affirmative defense in an action for slander, and the defendant has the burden of proving truth. *Town of South Padre Island v. Jacobs,* 736 S.W.2d 134, 140 (Tex.App.—Corpus Christi 1986, writ denied); *Frank B. Hall & Co. v. Buck,* 678 S.W.2d 612, 623 (Tex.App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.); *see Little v. Bryce,* 733 S.W.2d 937, 938 (Tex.App.—Houston [1st Dist.] 1987, no writ).

Johnson pled that she was slandered when Seals, Simmons, and Davis orally published, falsely, that she had "stolen" a Christmas wreath. Specifically, she pled that Davis published the accusation to Simmons and Seals, and that Simmons and Seals then repeated it to various other Randall's employees. The appellees submitted summary

---

2. It is clear that Johnson means her slander claims when she refers to "allegations of defamation." Slander is a type of defamation. *See*

*Bayoud v. Sigler,* 555 S.W.2d 913, 915 (Tex.Civ. App.—Beaumont 1977, writ dism'd).

judgment evidence that tended to show that, far from accusing Johnson of theft, they considered her motive for removing the wreath from the store an open question.

Johnson submitted summary judgment evidence that tended to show that the Randall's personnel believed that she had stolen the wreath, and were publishing the incident as a theft. Johnson does not dispute that she removed the wreath from the store without paying for it. However, she contends that this occurred because she had a lot on her mind and also due to the fault of Davis, the clerk who allowed her to pass his cash register station after clearly seeing the wreath, but not charging her for it as he had for her other items, or even asking her about it. She paid for the wreath the next morning when the matter was called to her attention.

The false imputation of the act of theft to an individual constitutes slander. *Ramos*, 711 S.W.2d at 334. Johnson's evidence was that:

(1) Barclay (Seals' superior) stated that, from his conversation with Seals, he understood Seals to be saying that Johnson "misappropriated" the wreath, and that, from their conversation, he also formed that opinion;

(2) After the incident, Johnson was suspended without pay for 30 days, while the maximum suspension allowable under Randall's policy is 21 days;

(3) Barclay mandated that Johnson take a polygraph test as a condition of reinstatement;

(4) The Randall's security officer who took Davis' report of the incident concluded that Johnson should be prosecuted for theft.

Citing *Southwestern Bell Tel. Co. v. Dixon*, 575 S.W.2d 596 (Tex.Civ.App.—San Antonio 1978), *writ dism'd w.o.j.*, 607 S.W.2d 240 (Tex.1980), the appellees argue that their statements were conditionally privileged. We acknowledge the rule of that case that a report of wrongdoing establishes a defendant's conditional privilege to make inquiries or investigations. *Id.* at 599.

However, once a conditional privilege is established, it may be lost by a showing of malice. *Marathon Oil Co. v. Salazar*, 682 S.W.2d 624, 630 (Tex.App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.); *Dixon*, 575 S.W.2d at 599. A statement is made with malice when the speaker entertained serious doubts as to the truth of his statement, but made it anyway. *Casso v. Brand*, 776 S.W.2d 551, 558 (Tex.1989); *Salazar*, 682 S.W.2d at 631.

"To assert that a defamation is qualifiedly privileged is an affirmative defense that is available only if evidence shows that the communication was made in good faith and without malice." *Goodman v. Gallerano*, 695 S.W.2d 286, 287 (Tex.App.—Dallas 1985, no writ); *see Salazar*, 682 S.W.2d at 630. Thus, the appellees had the burden of showing not only that their statements were conditionally privileged, but also that they were made without malice. *See Goodman*, 695 S.W.2d at 287; *Salazar*, 682 S.W.2d at 630.

The appellees did not meet this burden. While there is some evidence in the summary judgment record that their statements were made without malice, the record shows that the circumstances of their publication, and what exactly *was* published, are in dispute. In such a case, it is for the jury, not the court, to determine what the circumstances are, and for the court to determine the question of privilege from the circumstances thus ascertained; further, if the facts upon which the privilege is conditioned are in dispute, the facts are to be determined by the jury. *Denton Publishing Co. v. Boyd*, 460 S.W.2d 881 (Tex.1970); *see Salazar*, 682 S.W.2d at 631; *Root v. Republic Nat'l Bank*, 337 S.W.2d 709 (Tex.Civ.App.—Texarkana 1960, no writ).

We conclude that those who heard Davis, Simmons, and Seals publish the incident could have reasonably understood them to be publishing that Johnson *stole* the wreath. "If there is a question whether the hearer could reasonably understand the statement in a defamatory sense, an ambiguity exists, and a fact issue is presented." *Ramos*, 711 S.W.2d at 334. We hold that a fact issue exists regarding whether Davis', Simmons', and Seals' statements about Johnson's removal of the wreath could reasonably be understood to be defamatory.

We sustain point of error one.

In point of error two, Johnson argues that the trial court erred in granting summary judgment on her complaint of slander concerning the accusation "that plaintiff had stolen a sum of money ($68.44) from a cash drawer." The only statement in the body of her brief that could be considered pertinent to this point is:

> Simmons himself told Seals (on the telephone) that Mrs. Johnson "Admitted she took it" while Mrs. Johnson was pleading with him to clarify and pass on what she herself had just told him. Later, Seals and Simmons, in concert, would berate Mrs. Johnson during a conference recorded in a remarkable memorandum. *Seals, in particular, had little reason to treat a mistake or oversight as evidence of theft; he had received by "accident" far-greater sums, over far-longer periods of time with far-more opportunity for discovering and correcting the error.*

The text that precedes the word "it" in the first sentence of the above quote refers to the wreath, not the money. The balance of the quote has nothing to do with the cash drawer incident; in fact, Johnson's conclusion is entitled "Summary as to 'Wreath' Allegations" and addresses only that matter.

The lone statement highlighted above, if indeed it even refers to the cash drawer incident at all, does not tell us why the trial court erred in granting summary judgment on Johnson's claim for slander concerning the accusation that she "had stolen a sum of money ($68.44) from a cash drawer."

Texas Rule of Appellate Procedure 74, entitled "Requisites of Briefs," states in relevant part as follows:

> A brief of the argument may present separately or grouped the points relied upon for reversal. The argument shall include: ... (2) such discussion of the facts and the authorities relied upon as may be requisite to maintain the point at issue.

Tex.R.App.P. 74(f).

Johnson's sole statement relating to point of error two, if it even relates to that point, includes scant facts, *none* of which relate to how Seals, Simmons, or Davis allegedly slandered her on the matter of the cash drawer. Johnson presents no reasoning, analysis, or application of the law to the facts—i.e., no argument—on why we should reverse the trial court on this issue and shows us no basis on which to do so.

We overrule point of error two.

In point of error three, Johnson argues that the trial court erred in granting summary judgment regarding allegations of theft made against Johnson by Scottie Ketner (Ketner), an ex-employee at the store. Ketner is not a party to this lawsuit.

Ketner was employed in the cosmetics section of the store at the same time that Johnson worked there. Ketner reported to Johnson. During this time, Ketner complained to Seals and a Randall's vice-president, Jan Gillespie (Gillespie), about Johnson's management style and about Johnson's alleged use of store merchandise without paying for it. Ketner documented her complaints in memoranda.

Much of the memoranda's content does not refer to Johnson by name. However, we agree with Johnson that a defamatory publication need not identify its subject by name if those who perceive the defamatory publication may understand it as referring to the subject. *See Davis v. Davis,* 734 S.W.2d 707, 711 (Tex.App.—Houston [1st Dist.] 1987, writ ref'd n.r.e.); *Poe v. San Antonio Express–News Corp.,* 590 S.W.2d 537, 542 (Tex. Civ.App.—San Antonio 1979, writ ref'd n.r.e.).

Some of the memoranda, on the other hand, is directed at Johnson very clearly. The content of one memorandum is prefaced by the heading, "Manager in Question: Lynn Erb Johnson." This memorandum states that "I suspected and confirmed internal shrinkage. There was lots of pilferage in the warehouse (back room)."

It is uncontested that both Seals and Simmons discussed with other people the allegations that Johnson was stealing cosmetics, i.e., they repeated allegations already made by Ketner. A person may be liable for repeating a slanderous statement that was already made by another; every repetition of

a slander is a willful publication, making the person who repeats it subject to liability. *Patterson & Wallace v. Frazer,* 93 S.W. 146, 150 (Tex.Civ.App.1906), *rev'd on other grounds,* 100 Tex. 103, 94 S.W. 324 (Tex. 1906). A person who publishes a defamatory statement made by another becomes responsible for doing so. *Id.* at 150.

The question presented is whether the "hearer" could reasonably understand the statements made by Seals and Simmons on this matter in a defamatory sense. An ambiguity exists, and a fact issue is present. *See Ramos,* 711 S.W.2d at 334.

 The appellees contend that their statements were conditionally privileged. There is some evidence in the summary judgment record that these statements were made without malice. However, there is also evidence that they repeated the allegations made by Ketner. Proof that the defendant repeated a defamatory statement may itself be evidence of malice. *Canales v. Salinas,* 288 S.W.2d 207, 211 (Tex.Civ.App.—San Antonio 1956, writ dism'd w.o.j.). Additionally, malice, for the purposes of negating a conditional privilege, need not be proven by direct evidence, but may be inferred. *Salazar,* 682 S.W.2d at 631; *Buck v. Savage,* 323 S.W.2d 363, 373 (Tex.Civ.App.—Houston 1959, writ ref'd n.r.e.). We hold that there is some evidence from which malice may be inferred regarding the Ketner matter.

We sustain point of error three.

 In point of error four, Johnson contends that the trial court erred in granting summary judgment to the defendants on her claim of intentional infliction of emotional distress. The basis for Johnsons' claim is an interview of Johnson by Simmons and Seals wherein they inquired about the Christmas wreath incident.

 The cause of action of intentional infliction of emotional distress has four elements: (1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's actions caused the plaintiff emotional distress; and (4) the emotional distress suffered by the plaintiff was severe. *McAlister v. Medina Elec. Co-op., Inc.,* 830 S.W.2d 659,

665 (Tex.App.—San Antonio 1992, writ denied); *Havens v. Tomball Community Hosp.,* 793 S.W.2d 690, 692 (Tex.App.—Houston [1st Dist.] 1990, writ denied). In the employment context, a claim for intentional infliction of emotional distress will not lie for mere "employment disputes." *Johnson v. Merrell Dow Pharm., Inc.,* 965 F.2d 31, 33 (5th Cir.1992).

The summary judgment evidence includes an 18–line memorandum, signed by Simmons and Seals, describing the interview. Its description of the events of the interview is as follows:

> Lynn was asked by myself (Lewis Simmons) and Mr. Seals if she had paid for it and her reply was no. She said she had so much on her mind ... that she forgot to pay for it when was [sic] paying for her other items on Tuesday night. Lynn replied that she remembered that she hadn't paid for it when she switched vehicles with her husband Thursday morning.

> Lynn was asked by myself and Mr. Seals how can you forget to pay for an item when you were checking out with several other items at the same time, in the service center. Lynn replied that she had too much on her mind when she was checking out that night.

The memorandum concludes by stating that Seals told Johnson that she would be on 30–day suspension and that, at the end of the 30 days, she would be given the option of working at another Randall's store at $8.25 an hour. Although Johnson testified that Simmons never used the words "theft," "thief," "steal," or "stolen," and never raised his voice, Seals testified on the matter as follows:

> Q. What was Mrs. Johnson's mental attitude or her composure during this first meeting of the 29th?
>
> A. She was very shaken.
>
> Q. Was she crying?
>
> A. She did at times, yes.
>
> Q. Distraught. Did she appear to be afraid?
>
> A. Afraid?
>
> Q. Yes, sir.

A. Of the consequences of wondering about her job, yes.

The fact that Johnson was crying during part of the interrogation is some evidence of Johnson's emotional distress. We hold that there is an issue of material fact on intentional infliction of emotional distress.

We sustain Johnson's point of error four.

 In point of error five, Johnson argues that the trial court erred in granting summary judgment to the defendants on her claim of false imprisonment. She is not specific in her brief on this point. However, her second amended petition states that Johnson's false imprisonment claim is based upon the length of time involved in the interviews as well as having to stay in a "back room" while waiting for Seals to arrive. Under the heading "False Imprisonment," Johnson pleads that "her liberty was falsely and wrongly restrained by Defendant Lewis Simmons at the direction of Mike Seals ... by ordering and instructing her to remain within confined spaces prior to the arrival of Mike Seals on Thursday, November 29, 1991, for a period of approximately two to three hours."

 The elements of the tort of false imprisonment are (1) willful detention of the plaintiff; (2) without the plaintiff's consent; (3) without authority of law. *Sears, Roebuck & Co. v. Castillo,* 693 S.W.2d 374, 375 (Tex. 1985); *Pizza Inn, Inc. v. York,* 658 S.W.2d 274, 276 (Tex.App.—Houston [1st Dist.] 1983, no writ). If the plaintiff voluntarily complies with a request to remain and establish his or her innocence, there is no claim for false imprisonment. *Martinez v. Goodyear Tire & Rubber Co.,* 651 S.W.2d 18, 20 (Tex.App.—San Antonio 1983, no writ); *Kroger Co. v. Warren,* 420 S.W.2d 218, 222 (Tex.Civ.App.—Houston [1st Dist.] 1967, no writ). A detention is unlawful when "it prevents a person from moving from place to place *or in the direction he wishes to go." Warren,* 420 S.W.2d at 222 (emphasis added).

Johnson testified in her deposition as follows:

I asked him [Simmons] if I should stay here, why should I stay here and cool my feet and I asked him about a time frame. He told me it would be a while and then he told me I can go back and paint on the Dickens on the Strand booth. I told him personally, at this time, I had no desire to go back and paint on the Dickens on the Strand booth. He said, well, he really didn't feel like it was a good idea for me to be out on the floor. And, of course, during this time my employees were calling on the intercom. People were needing my assistance[.]

Johnson also testified that she believed Simmons would physically try to stop her from leaving if she tried to leave, based on his "sterness, his tone of voice, his insistence" that she "stay put." She admitted that Simmons never told her directly not to go out on the floor, and stated that, rather, he "inferred" [sic] that she should "stay put."

Johnson actually did get up and leave the room on two occasions, once to go to the bathroom, and once to go to another "back room." However, as noted above, a detention may be unlawful if it prevents a person from going "in the direction he wishes to go." *Warren,* 420 S.W.2d at 222. Johnson's testimony does indicate that Simmons attempted to prevent her from returning to her department on the floor.

 An unlawful detention may be accomplished by words alone if their effect is to restrain the plaintiff. *Martinez,* 651 S.W.2d at 20. Where it is contended, as here, that the unlawful detention was created by threat, the question is whether "the threat was such as would inspire in the threatened person a just fear of injury to his person, reputation, or property." *Id.* at 20–21; *see also Warren,* 420 S.W.2d at 222. Furthermore, in answering this question, it is proper to consider "the bearing on which [the employee's] employment might have upon her submission to the authority of her employer." *Black v. Kroger Co.,* 527 S.W.2d 794, 800 (Tex.Civ.App.—Houston [1st Dist.] 1975, writ dism'd).

Concerning two of the elements, the appellees do not argue that Johnson consented to her detention, and we reject their arguments that they detained her with authority of law. They refer us to Texas Civil Practice and Remedies Code section 124.001. However, that section states that "[a] person who rea-

sonably believes that another has stolen or is attempting to steal property is privileged to detain that person in a reasonable manner and for a reasonable time *to investigate ownership of the property.*" TEX.CIV.PRAC. & REM.CODE ANN. § 124.001 (Vernon 1986) (emphasis added). Here, the summary judgment evidence from both sides conclusively proved that ownership of the wreath was not an issue; Johnson admitted several times not paying for it until the next day. There was no doubt that Randall's rightfully owned the wreath.

Citing *Safeway Stores, Inc. v. Amburn,* 388 S.W.2d 443, 446 (Tex.Civ.App.—Fort Worth 1965, no writ), the appellees also argue that "an employer is legally entitled to detain an employee to discuss 'all matters bearing upon the duties and purposes attendant to the employment and particularly where he has information touching upon the fidelity of the employee.'" We do not disagree with the *Amburn* holding. However, what is at issue here is the lawfulness of *this particular detention, not* Randall's entitlement to detain Johnson in the first place. The question is, did the facts of Johnson's detention make it unlawful; not, was Randall's entitled to detain her at all? *See, e.g., Warren,* 420 S.W.2d at 220, 222 (grocery store employee was within rights to detain checkout clerk for questioning about missing money, but was nevertheless liable for false imprisonment when detention was accomplished by assaulting the clerk).

Johnson testified that Simmons conveyed to her that she should "stay put." The appellees have not proven that Simmons' "threat" did not inspire a just fear of injury in Johnson. We hold that a genuine issue of material fact exists regarding the unlawfulness of Johnson's detention.

We sustain Johnson's point of error five.

▆ In point of error six, Johnson argues that the trial court erred in granting summary judgment to the defendants on her claim for conspiracy.

The appellees point out that all of Johnson's allegations involve conduct of persons who were either Randall's employees or Randall's agents at the time her conduct is alleged to have occurred. Thus, they contend that because all of the conduct of which Johnson complains occurred within the course and scope of the employees' and agents' service to Randall's, her conspiracy claim is defeated by the rule that a corporation cannot conspire with itself.

▆ Jimmy Gillane, a security guard at the store and not a defendant in this case, is implicated in Johnson's conspiracy claim. Security guards are agents of the establishments they are hired to protect. *Warren,* 420 S.W.2d at 220. "[T]he acts of a corporation's agents are deemed to be acts of the corporation itself." *Fojtik v. First Nat'l Bank of Beeville,* 752 S.W.2d 669, 673 (Tex. App.—Corpus Christi 1988), *writ denied,* 775 S.W.2d 632 (Tex.1989); *see Warren,* 420 S.W.2d at 222. Furthermore, Johnson stated in her response to the appellees' motion for summary judgment that Gillane worked "under the direct supervision and control of Randall's[.]" The allegedly conspiratory conduct of its agent does not remove a corporation from the rule that "a corporation cannot conspire with itself." *Wilhite v. H.E. Butt Co.,* 812 S.W.2d 1, 5 (Tex.App.—Corpus Christi 1991, no writ); *Fojtik,* 752 S.W.2d at 673.

We agree with the appellees that a corporation cannot conspire with itself. While Johnson argues that "the record suggests that non-employees may well have been involved," she gives no record cite to support this conclusion. Although we have no duty to search the record for evidence supporting Johnson's position, we have done so and are unable to find any. *See Cissne v. Robertson,* 782 S.W.2d 912, 923 (Tex.App.—Dallas 1989, writ denied). Johnson points out that "Seals, Simmons, and Davis were all individual parties defendant, and such persons can be held individually liable for a conspiracy among themselves." However, it is uncontested that the individuals involved were in the course and scope of their employment with Randall's.

Because, as a matter of law, a corporation and its agents constitute a single entity, a corporation and its agents cannot form a conspiracy with "itself." *See Fojtik,* 752 S.W.2d at 673; *see also Wilhite,* 812 S.W.2d

at 5. As a result, Johnson has no claim for conspiracy here.

We overrule Johnson's point of error six.

In point of error seven, Johnson argues that the trial court erred in granting summary judgment to the defendants on her claim of tortious interference with contractual relations. The appellees contend that Johnson's claim is barred by the rule that one cannot tortiously interfere with one's own contract. We agree.

All of Johnson's allegations involve conduct of persons who were either Randall's employees or Randall's agents at the time the conduct is alleged to have occurred, and all of the conduct of which Johnson complains occurred within the course and scope of the employees' and agents' service to Randall's.

Texas courts have held that one cannot tortiously interfere with one's own contract. *Schoellkopf v. Pledger,* 778 S.W.2d 897, 902 (Tex.App.—Dallas 1989, writ denied); *Frost Nat'l Bank v. Matthews,* 713 S.W.2d 365, 369 (Tex.App.—Texarkana 1986, writ ref'd n.r.e.); *see John Masek Corp. v. Davis,* 848 S.W.2d 170, 175 (Tex.App.—Houston [1st Dist.] 1992, writ denied). "Liability for tortious interference is founded only on the acts of an interfering third party." *Schoellkopf,* 778 S.W.2d at 902. Johnson has no claim for tortious interference with contract.

We overrule point of error seven.

In point of error eight, Johnson contends that the trial court erred in granting summary judgment to the defendants on her claims for wrongful discharge and breach of contract.

Johnson bases this claim on the "acknowledgement" document styled "Randall's Food Markets, Inc. Rules and Policies Acknowledgement," referring to it as "her written agreement" and "the contract." It is the only "agreement" that she pled was a contract, also referring to it in her second amended petition as a "written agreement." However, Johnson testified in her deposition as follows:

Q. With respect to your wrongful discharge claim, do you contend you had a written employment contract with Randall's?

A. No, sir.

In her brief, she presumes that the document is a contract, offering no authorities to support its status as such.

We disagree that the policy document is a contract. Texas courts of appeals have consistently refused to recognize documents that merely advise the reader of the company's policies and procedures, and do not contain express agreements or written representations regarding procedures for discharge, as contracts, even where the employee signed an acknowledgement of the policies and procedures, as here. *See, e.g., Hicks v. Baylor Univ. Medical Cen.,* 789 S.W.2d 299, 302 (Tex.App.—Dallas 1990, writ denied); *Stiver v. Texas Instruments, Inc.,* 750 S.W.2d 843, 846 (Tex.App.—Houston [14th Dist.] 1988, no writ); *Vallone v. Agip Petroleum Co.,* 705 S.W.2d 757, 759 (Tex.App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.).

If there are no specific contract terms or express agreements to the contrary, a Texas employment relationship may be terminated at any time by either the employer or the employee. *Vallone,* 705 S.W.2d at 758. Johnson points to the phrase "for any lawful reason" as a specific term to the contrary. We find nothing about this phrase that limits Randall's at-will rights, unless it is limiting one's rights to represent that one will act lawfully.

By stating that "Randall's has the right to discharge any employee at any time, with or without cause," Randall's effectively reserved its at-will rights. It did not take away or limit those rights by adding the words, "for any lawful reason."

We overrule Johnson's point of error eight.

In point of error nine, Johnson contends that the trial court erred in overruling her motion for new trial. In point of error 11, she argues that the trial court erred *"if and to the extent* that it disregarded supplemental evidence presented in connection" with her motion for new trial. (Emphasis added.) These two points are briefed together.

■ Under these points, Johnson states that "[s]everal categories presented after the court's announcement of judgment were not, technically, newly discovered, but were urged upon the court as evidence which ought to, in fairness, be considered." None of the authorities that Johnson cites as support for her "fairness" proposition support it. When a motion for new trial is filed after summary judgment has been rendered, the court may consider *only* the record as it existed prior to its granting the summary judgment. *See Leinen v. Buffington's Bayou City Serv. Co.,* 824 S.W.2d 682, 685 (Tex.App.—Houston [14th Dist.] 1992, no writ).

Although a party may be entitled to a new trial on the extraordinary ground of newly discovered evidence, Johnson concedes, as noted above, that several "categories" of her evidence "were not, technically, newly discovered[.]" This statement implies that some of her evidence *did* constitute newly discovered evidence; however, she does not tell us in her brief what the newly discovered evidence is.

While we have no duty to examine the record to discern which of those items may have been newly discovered, we have done so and are unable to find any. *See Cissne,* 782 S.W.2d at 923.

■ The standard of review of a trial court's denial of a motion for new trial is abuse of discretion. *Jackson v. Van Winkle,* 660 S.W.2d 807, 808–809 (Tex.1983). The court did not abuse its discretion in denying Johnson's motion for new trial.

A point of error that complains that a trial court erred "if and to the extent that it" did something, and a like argument, present nothing for us to review. Such contention is mere speculation. Point of error 11 and the accompanying argument therefore fail to present anything for our review.

We overrule points of error nine and 11.

In point of error 10, Johnson contends that the trial court erred "if and to the extent it ruled originally on the basis of objections to the summary judgment evidence of plaintiff, all such objections having been waived by defendants in writing." The same principle that applies to point of error 11 and its argument applies to point of error 10 and its argument, as well.

We overrule point of error 10.

We reverse the judgment of the trial court regarding Johnson's claims for slander as to the Christmas wreath, slander as to the Ketner memoranda, false imprisonment, and intentional infliction of emotional distress, and remand the cause to the trial court on these claims; in all other respects, the judgment of the trial court is affirmed.

O'CONNOR, J., concurs.

COHEN, J., dissents and concurs.

O'CONNOR, Justice, concurring.

I concur in the result but disagree with the majority's resolution of point of error 12. First, it was not necessary for the majority to reach the issue of whether the trial court properly refused to permit a late amendment to the plaintiff's pleadings, because we are reversing the summary judgment for other reasons. Once the case is remanded to the trial court, the plaintiff will be able to amend her pleadings.

Second, the trial court should almost always allow a party to file amendments to its pleadings, particularly when the party is faced with a motion for summary judgment. Under our rules of procedure, the burden is on the party opposing an amendment to show surprise and prejudice. The purpose of the summary judgment procedure is to permit the trial court to promptly dispose of cases that involve unmeritorious claims or untenable defenses. *City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 678 n. 5 (Tex. 1979). The purpose is not to deprive litigants of their right to a trial by jury. *Rogers v. R.J. Reynolds Tobacco Co.,* 761 S.W.2d 788, 795 (Tex.App.—Beaumont 1988, writ denied). If a party files an amendment to its pleadings less than seven days before a summary judgment hearing, the trial court's remedy is to grant the summary judgment and sever it from the late-added pleadings.

I would not reach point of error 12.

COHEN, Justice, dissenting in part and concurring in part

I dissent from the majority's decision to sustain points of error four and five.

I would overrule point four because I believe that Johnson cannot prevail on her claim of intentional infliction of emotional distress. First, the majority opinion states that a claim of intentional infliction of emotional distress will not lie for mere "employment disputes." *Johnson v. Merrell Dow Pharm., Inc.*, 965 F.2d 31, 33 (5th Cir.1992). This is an employment dispute. Second, the defendants' conduct was, as a matter of law, not extreme and not outrageous. The summary judgment evidence concerning this alleged tort is set out in the majority opinion. It consists solely of the following:

(1) Managers Simmons and Seals asked Johnson how she could forget to pay for an item when she was checking out and paying for others items at the same time;

(2) Simmons never used the words "theft," "thief," "steal," or "stolen," and never raised his voice to Johnson; and

(3) Johnson was shaken and crying because she was afraid of losing her job.

Liability for this tort "does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." Restatement (Second) of Torts § 46 cmt. d (1965). Liability for outrageous conduct "has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Johnson*, 965 F.2d at 33 (quoting Restatement (Second) of Torts § 46 cmt. d (1965)). In my opinion, this case does not come close to meeting that standard.

How can it be extreme and outrageous for an employer to respond this way when an employee admits she took the store's property without paying for it? I would overrule point of error four and deny Johnson a trial on the claim of intentional infliction of emotional distress.

Johnson's claim for false imprisonment seems equally frivolous to me. Johnson's pleading is set out in the majority opinion. It consists of the following:

(1) After Simmons interviewed her, he told her to paint a booth for the store's exhibit on parade at the Dickens on the Strand festival;

(2) Johnson told him she did not want to do that;

(3) Simmons stated he did not think it was a good idea for her to be out on the floor;

(4) Johnson's subordinates were calling for her on the intercom because they needed assistance;

(5) Simmons never told her directly not to go out on the floor, but she thought that he would try to stop her if she did;

(6) Johnson nevertheless left the room on two occasions, once to go to the bathroom, and again to go to another back room.

The majority relies on *Kroger Co. v. Warren*, 420 S.W.2d 218 (Tex.Civ.App.—Houston [1st Dist.] 1967, no writ). The facts of that case seem much different to me. In *Warren*, security guards put an employee in a room for "about three hours," caught her by the arm and held her to prevent her departure, threatened to call police if she did not sign a confession of stealing, threatened to embarrass her family if she refused to sign, made theft accusations that a trial judge found to be false, and stated she would be held in the room and jailed unless she signed a confession. *Id.* at 220–21. Under those egregious circumstances, this Court held that a detention is unlawful if it prevents a person "from moving from place to place or in the direction he wishes to go." *Id.* at 222. As applied to an employment dispute, that statement seems much too broad, but it is understandable, given the facts in *Warren*.

Here, Johnson left the room on two occasions and nobody tried to stop her. The "detention" of which she complains is that her supervisor told her to work on one task, the painting of the booth, when she wanted to work on another task, meeting her subordinates and customers on the sales floor.

Is it now false imprisonment when a supervisor tells an employee to work at a certain location on one task when the employee would prefer to work elsewhere on another

task? I cannot see more to this claim than that. Generally, an employee's duty is to go where his employer reasonably tells him to go and do what his employer reasonably tells him to do. If the employer says, "Stay here and work on the booth," that should not be considered false imprisonment. Thus, I would overrule point of error five and deny Johnson a trial on the claim of false imprisonment.

In those respects, I dissent from the majority opinion.

I concur in the reversal on the slander claim regarding the wreath incident and the Ketner papers. Johnson presented evidence that managers told facts about those incidents to people who had no need to know them because they had no management responsibility for dealing with them. Specifically, she alleged the Ketner papers became known to low-ranking employees and to customers. Because Johnson states she did not reveal these facts to anyone, that is some evidence that others did. Because in reviewing a summary judgment we must grant all reasonable inferences from the evidence in favor of Johnson, we must, at this stage of the proceedings, treat this as some circumstantial evidence of nonprivileged communication of these facts by management.

Moreover, Johnson alleged that when the security guard interviewed witnesses in the store restaurant, he talked loud enough for others to hear that she was accused of theft. While this may be weak, it is probably enough to defeat a motion for summary judgment, given that we must give Johnson all reasonable inferences that may be drawn from these facts.

I agree with the Court's disposition of Johnson's other claims.