Opinion issued May 13, 2010

 

 



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-08-00776-CV

———————————

Calsaro 10000 Old Katy Ltd., Appellant

V.

The State of
Texas, Appellee



 



 

On Appeal from the County Civil Court at Law No. 4

Harris County, Texas



Trial Court Case No. 841641

 



 

MEMORANDUM OPINION

          In
this appeal from a condemnation proceeding, appellant Calsaro 10000 Old Katy
Ltd. (Calsaro) challenges the jury’s verdict on the value of the property
condemned by appellee, the State of Texas, in connection with the expansion of
Interstate 10 (I-10) in Houston.  In four
issues, Calsaro argues that the trial court erred by: (1) permitting evidence
and argument about the value of the property that was influenced by the effect
of the State’s project; (2) admitting the testimony of David Dominy, the
State’s expert witness on property valuation; (3) permitting the State to refer
to the building’s lack of tenants in 2005 as part of its jury argument; and (4)
prohibiting Calsaro from rebutting or explaining the State’s use of project
influence.

          We
affirm.

Background

          In
1990, Calsaro purchased a 34,000 square foot multi-tenant commercial building
and a warehouse building located in Harris County, Texas, on Old Katy Road near
Witte Road.  The commercial building was
located near Memorial City Mall and Memorial City Hospital along the north side
of I-10.  After purchasing the building,
Calsaro renovated it and leased space to various tenants.

          At
the beginning of 2003, the State notified Calsaro’s tenants that it intended to
condemn the commercial building in the course of expanding I-10.  Calsaro and the State were unable to reach an
agreement about the value of the building, and, on February 16, 2005, the State
gave Calsaro its final offer of $2,922,636 as compensation for the building,
warning that it would proceed with a condemnation action if Calsaro did not
accept the offer.

          On
June 29, 2005, the State filed its petition for condemnation against
Calsaro.  The trial court appointed three
Special Commissioners to hold a hearing on the State’s petition.  On August 5, 2005, the Special Commissioners
heard the State’s petition and valued the building at $3,726,613, and the State
deposited funds in that amount into the trial court’s registry.  Calsaro filed its objection to the award of
the Special Commissioners on September 1, 2005, arguing that the amount awarded
by the Special Commissioners did not fully compensate Calsaro for the loss of
the commercial building.  On October 26,
2005, Calsaro withdrew the funds granted by the Special Commissioners from the
trial court’s registry.

          The
case was heard by a jury in the trial court on July 15, 2008.  The State filed a pre-trial motion in limine
“seeking an order restricting opposing counsel and witnesses called on behalf
of opposing parties from mentioning of certain matters,” including, in relevant
part:

6. Loss of Rentals/Income: Any question, comment or
evidence of any character as to the loss of rentals or loss of income to the
owners of the land involved occasioned by the imminence of the taking of the
land by the State of Texas or occasioned by the announcement by the State of
Texas that said property would be taken. . . .

 

7. Negative Impact on Rental Property/Loss of Rentals
and Income/Projected Lost Profits.  Any
question, comment, evidence, or testimony attempting to show loss of rentals or
loss of income to the owners of the land involved occasioned by the imminence
of the State’s acquisition or occasioned by the announcement by the State that
said property would be acquired, as this is overly prejudicial, and lost
profits testimony is necessarily speculative.

 

The trial court’s “Order in Limine” ordered that:

[A] ll parties, all
attorneys, and all witnesses called by the attorneys refrain from direct and
indirect argument, mention, reference, comment, suggestion, and interrogation
(including the offering of documentary evidence) of any witness, juror, or
prospective juror regarding any of the matters set forth below. . . .  Any person seeking to offer evidence of any
of the matters covered by this order, or seeking a trial ruling on the
admissibility of any matter covered by this order, shall first request and
obtain a ruling from the Court outside the presence and hearing of the jurors
and prospective jurors in regard to any theory of admissibility on the
following matters:

 

          . . . .

 

6.  Granted, as Modified: from 1/1/03 forward is
fair game.

 

7.  Granted, as Modified: from 1/1/03 forward is fair
game.

 

The record does not reflect that Calsaro filed any
objection to this order in limine.  While
Calsaro did file its own motion in limine regarding the admissibility of
certain photographs of the building taken after condemnation, it did not seek an
evidentiary hearing of any type seeking a determination of the specific date
that the State’s project influence began to affect the property values or the
effect that date would have on the admissibility of evidence.

At trial, Calsaro argued that the
commercial building’s suitability for retail use, location, and high quality
entitled Calsaro to higher compensation for the condemnation than it had
already been offered.  Calsaro argued that, while the building was 27 years
old, it had an “effective age” of only six years due to the renovations and
quality of construction.  Calsaro’s
expert, John Fox, testified that the building was useful for commercial retail
because of the location and quality of the facilities and that retail property
is more valuable than an office building. 
Fox testified that the fair market value of the property was $7,600,000, or $6,023,404 after deducting the value of
the portion of the property that was not condemned.  He reached this number by comparing various
properties, several of which were either exclusively considered retail
properties, like strip centers containing restaurants and other stores, or had
a high number of retail tenants included among medical offices and other types
of offices.  Tofigh Shirazi, Calsaro’s
corporate representative, testified that when he bought the building at
foreclosure in 1990 it was an office building.

          The State’s expert, David Dominy,
testified that several factors indicated that the building was not ideal for
use as retail space, including insufficient parking, lack of parking at the
front of the building that would typically be found with retail buildings, poor
traffic flow due to lack of a traffic signal at the main intersection and the
building’s location on the north side of I-10, its location opposite more
desirable locations on the south side next to Memorial City Mall and Memorial
City Hospital, and a lack of proper aesthetics and a building-to-land ratio
that would appeal to retail tenants.  Dominy
testified that the “effective age” of the building was 19 years, rather than
six.  He concluded that the condemnation
award should be $2,334,120.

Dominy reached his conclusion by comparing various properties that
supported mostly office tenants.  Dominy
testified that he did not use properties that were located along the I-10
corridor because their values could have been affected by general knowledge of
the State’s plans to widen the interstate highway.  The State also admitted into evidence all of
the leases it had for Calsaro’s property. 
These leases showed that Calsaro had a number of tenants in 2003,
including V-Monitor (an oil services company), West Houston Chiropractor,
DaVita Memorial Dialysis, and Intercontinental United Investors Corporation.  It also had one retail tenant—Tasca Furnishing
Imports Company—by lease entered into in May 2003, after the State had
announced its intention of condemning the building.  Tasca Furnishing was the only retail tenant
Calsaro had ever had.  Dominy testified
that, based on Shirazi’s “business and personal relationship with” Tasca’s
owner, the lease was not an arms-length transaction.  Calsaro did not object to the admission of
any of these documents or to Dominy’s testimony.  

          During closing argument, the State
addressed the central evaluative theme of the trial—whether the commercial
building was better suited as a retail property or as an office building.  It argued:

Let’s talk about retail versus office. 
What do we know about this property? 
We know that it was now what? 
Bought in 1990.  It was a
foreclosure.  We know that it was an
office building.  It was an office
building with a warehouse to the  north.

          So the historical use of
this property and how it was bought, it was an office.  Moreover, how long did these people have to
develop this property?  They got it in
1990.  By 2005 they have one retail
tenant, who is Mr. Shirazi’s friend and a business partner of his, who signed
the lease after the State notified them that the property was being
condemned[.]  Does this sound like a valid
lease to you all?  That was the one
retail tenant.  Did you see anyone else
talk about the other retail tenants?

          If I were the landowner, I
would be up in your face saying, we had this tenant.  Here’s the picture.  Here’s the lease.  Did you see any of that?  No, you didn’t.

          The landowner has the
burden of proof to convince you.  Well,
why isn’t [sic] there any other retail tenants? 
Because that’s the only one they had, the landowner’s friend.

 

Calsaro did not make any objections during this
portion of the State’s closing argument, but, during its rebuttal closing
argument, it responded to this argument, with some objections by the State:

[Calsaro]:    Let me tell you the thing that really
offends me the most, though, and that’s the way [the State’s attorney] talks to
you about the tenants in the building at the date of the taking.  Okay?

 

She says, where are the
retail tenants?  Then she says, where are
the tenants?  Okay?  Were there problems having tenants at the
date of the take?  Why were there?  You know why? 
Because the State created it. 
They told you that.  They told you
that they were notified in the spring of 2003. 
Now, they say, well, where are all the tenants?  They ran them off.  They ran them off.  They sent out notices to the tenants.  You heard that.  Now they’re saying . . . 

 

[the State]:  Objection, your honor.

 

[trial court]:          Sustained.  Objection sustained.

 

[Calsaro]:    You heard Mr. Dominy say during his
testimony that he was very careful not to include any sales from the Katy Freeway
because of the way that the knowledge in the community would have on the sales
[sic].  He felt like it wouldn’t be fair
to include sales on the Katy Freeway or rentals on the Katy Freeway because of
the knowledge in the community.

 

He doesn’t want to give the
benefit of increased rentals.  That’s
understandable.  But then, to come back
and hold it against the property owner because there aren’t tenants there?  I mean, I find that personally
offensive.  I am—

 

[State]:        Oh, your honor, the State never—

 

[trial court]:          Sustained.  Sustained.

 

[Calsaro]:    It’s not only disturbing.  It’s just not fair.  I think that’s what we’re talking about.

 

[State]:        Objection, your honor.

 

[trial court]:          Sir, she’s made an objection.  Will you let me rule?

 

[Calsaro]:    I’m sorry.

 

[trial court]: She made an
objection.  I’m sustaining it.

 

The jury’s verdict valued the property at
$2,850,000, which was $876,813 less than the Special Commissioners’ $3,726,613
valuation of the building.  Calsaro
objected to entry of judgment.

On August 7, 2008, Calsaro filed
its “Defendant’s Objections to Entry of Judgment,” arguing that the jury
verdict was flawed because “the impact of the project influence was introduced
by the State through, among other witnesses, its own expert appraiser despite
the fact that significant evidence was excluded when sought to be introduced by
Calsaro, even suppressing any argument to that effect during closing
argument.”  The post-trial motion did not
cite to any specific evidence or arguments that supported Calsaro’s general
complaint in the motion.

On August 8, 2008, the trial court
entered judgment ordering Calsaro to return $876,813, the difference between the
Special Commissioners’ valuation of the building and the jury’s, and to pay the
State’s costs pursuant to section 21.047 of the Texas Property Code, allowing a
condemnor to recover costs from a property owner when “the court’s
determination of damages is less than or equal to the amount the condemnor
offered before proceedings began.”  See Tex.
Prop. Code Ann. § 21.047 (Vernon 2000). 
This appeal followed.

Evidence of Property Value

          In
its first issue, Calsaro argues that the trial court erred in allowing the
State to present argument and evidence about the value of the commercial
building condemned for the widening of I-10 that was tainted by “project
influence,” or the effect on market values when the public learns of the
State’s building plans.  See Exxon Pipeline Co. v. Zwahr, 88
S.W.3d 623, 627–28 (Tex. 2002).  Calsaro
maintains that the trial court’s ruling on the State’s motion in limine, which
permitted testimony about loss of rental income and projected lost profits only
from January 1, 2003 forward, constituted an erroneous legal ruling.  In its second issue, Calsaro argues that the
trial court’s “inversion of the project influence rule” led it to err in
allowing the testimony of the State’s expert witness, David Dominy,
incorporating the decline in rentals occurring after the State announced plans
to demolish the building.  The State
argues that Calsaro failed to preserve either of these complaints.

A.      Trial Court’s Ruling on Motion in Limine

In its first issue, Calsaro argues
that its complaint is preserved because “courts must ‘look to the substance of
the plea for relief to determine the nature of the pleading, not merely the
form of title given to it’” and because “an order granting a motion in limine
can preserve error if it is sufficiently specific about the exclusion of
evidence.”  Calsaro argues that the trial
court’s ruling on the motion in limine “was specific enough to preserve error
for this Court’s review” and that its post-trial objection to the entry of
judgment, pointing out the trial court’s erroneous legal ruling on the motion
in limine, was sufficient to preserve its complaint.

To preserve a complaint for
appellate review, the complaining party must have made a timely objection,
request, or motion with sufficient specificity and obtained a ruling on that
objection, request, or motion.  Tex. R. App. P. 33.1(a).  A ruling on a motion in limine is not a
ruling on the admissibility of evidence and does not preserve a complaint for
appellate review.  Pojar v. Cifre, 199 S.W.3d 317, 339 (Tex. App.—Corpus Christi 2006,
pet. denied); Glenn v. Kinco Crane, Inc.,
836 S.W.2d 646, 648 (Tex. App.—Houston [1st Dist.] 1992, no writ).

          We
begin by noting that Calsaro never objected to the trial court’s order in
limine, allowing the State to present arguments and evidence about the value of
the condemned building from January 3, 2001 on. 
Nor did it ever object to or request a legal ruling on the admissibility
of any particular evidence on the ground that it was affected by project
influence.  The trial court’s order in
limine states that evidence on loss of rentals or loss of income occasioned by
the imminence of the taking or by the announcement by the State that the
property would be acquired was barred for the period before January 1, 2003,
but “from 1/1/03 forward is fair game.” 
It states with respect to the admissibility of such evidence at trial: 

Any person seeking to offer
evidence of any of the matters covered by this order, or seeking a trial ruling
on the admissibility of any matter covered by this order, shall first request
and obtain a ruling from the Court outside the presence and hearing of the
jurors and prospective jurors in regard to any theory of admissibility of the
[matters ruled on in the motion].

 

Thus, the trial court’s own ruling on the motion in
limine clearly indicates that it is not a ruling on the admissibility of the
evidence, and the general rule that a motion in limine does not preserve a
complaint for appellate review applies.  Nor
does a post-trial objection to entry of judgment present a proper objection to
the admissibility of evidence.  See Atl. Richfield Co v. Misty Prods., Inc.,
820 S.W.2d 414, 421 (Tex. App.—Houston [14th Dist.] 1991, writ denied) (“To
preserve complaint on appeal regarding a trial court’s ruling on the
admissibility of evidence, a party must make a timely objection and obtain a
ruling before the testimony is offered and received.”); see also Tex. R. App. P.
33.1(a) (requiring timely request, objection, or motion to preserve complaint
for appellate review).  We hold that
Calsaro did not preserve its complaint about the trial court’s ruling on the
motion in limine.

          We
overrule Calsaro’s first issue.

B.      Objection to Expert Testimony

          We
further conclude that Calsaro failed to preserve any complaints about David
Dominy’s testimony because it failed to make any objection at trial to the
particular testimony and exhibits it complains of in its brief, nor did it make
any other objections in reference to a project influence date generally or to
the effect of project influence on the testimony or documents presented by the
State’s expert witness, David Dominy. 
Thus, this argument fails because it was not adequately presented to
this Court on appeal.  See Tex.
R. App. P. 33.1, 38.1(i).  Nor is
Calsaro’s general complaint about the trial court’s “inversion of the project
influence rule” in its order in limine sufficient to preserve any issue for
appellate review, as we have already discussed.

          We
overrule Calsaro’s second issue.

 

Improper Jury Argument

          In
its third issue, Calsaro argues that the trial court allowed the State to
employ improper jury argument.

          To
obtain a reversal of a judgment on the basis of improper jury argument, a party
must prove (1) an error (2) that was not invited or provoked, (3) that was
preserved at trial by a proper objection, motion to instruct, or motion for
mistrial, and (4) that was not curable by an instruction, a prompt withdrawal
of the statement, or a reprimand by the trial court.  Standard
Fire Ins. Co. v. Reese, 584 S.W.2d 835, 839 (Tex. 1979); see also Phillips v. Bramlett, 288
S.W.3d 876, 883 (Tex. 2009) (“Appellate complaints of improper jury argument
must ordinarily be preserved by timely objection and request for an instruction
that the jury disregard the improper remark.”). 
Furthermore, Texas Rule of Civil Procedure 324(b)(5) provides that “[a]
point in a motion for new trial is a prerequisite” to complain on appeal about
an “[i]ncurable jury argument if not otherwise ruled on by the trial
court.”  Tex. R. Civ. P. 324(b)(5). 


Calsaro did not object to the
complained-of jury argument before the trial court, nor did it file a motion
for new trial.  Calsaro’s post-trial objection
to the entry of judgment likewise failed to complain about any particular jury
argument made by the State.  Thus, this
issue is not preserved for appellate review. 
See Tex. R. Civ. P. 324(b)(5); Standard Fire Ins. Co., 584 S.W.2d at 839 (holding that to obtain
reversal of judgment based on improper jury argument, party must prove, among
other things, that error was preserved by proper objection, motion to instruct,
or motion for mistrial).

          We
overrule Calsaro’s third issue.

In its fourth issue, Calsaro argues
that its own jury argument was improperly curtailed because the trial court
prohibited it from responding to the State’s argument that it had only one
retail tenant in 2005.

          Calsaro
has failed to show that the trial court’s rulings sustaining the State’s
objections to Calsaro’s closing arguments were erroneous.  One of the main contentions made by Calsaro
throughout the trial was that the building was appropriate for use as a retail facility.  The evidence presented at trial reflected
that from 1990 to the time of the condemnation in 2005 Calsaro had only had one
retail tenant—a friend of the owner of
Calsaro who entered into the lease after the condemnation was announced.  The State’s closing argument addressed
Calsaro’s position that the building was a retail property by pointing out the
evidence presented at trial: that the building had only had one retail tenant
in all of the time it was owned by Calsaro and that that lease was not an
“arms-length” transaction, but a transaction between friends and business
associates.  See Clark v. Bres, 217 S.W.3d 501, 510 (Tex. App.—Houston [14th
Dist.] 2006, pet. denied) (“A litigant is entitled to have his counsel argue
the facts of the case to the jury.”) (citing Tex. Sand Co. v. Shield, 381 S.W.2d 48, 57–58 (Tex. 1964)).

On appeal, Calsaro argues that it
should have been permitted to rebut the State’s statement by arguing that the
State was trying to “come back and hold it against the property owner because
there aren’t tenants there” and that the State’s arguments were “offensive” and
“disturbing.”  Calsaro’s argument,
however, substantially mischaracterizes the State’s jury argument and does not
comport with the evidence in the record, and is thus inappropriate.  See
Clark, 217 S.W.3d at 510 (“[T]he Texas Supreme Court [stated]: ‘the
salutary right of counsel . . . to speak his mind is subject to obvious limits,
which excessive language may exceed—either by connoting an idea or fact without support in the record or by
its very character as inflammatory.’”) (citing Southwest Greyhound Lines v. Dickson, 236 S.W.2d 115, 119 (Tex.
1951)).  The trial court did not err in
sustaining the State’s objection to Calsaro’s closing argument; thus, Calsaro failed
to establish it is entitled to reversal on this ground.  See
Standard Fire Ins., 584 S.W.2d at 839 (holding that party must prove error,
among other things, to obtain reversal on basis of improper jury argument).

          We
overrule Calsaro’s fourth issue.

 

 

Conclusion

          We
affirm the judgment of the trial court.

 

 

 

                                                                   Evelyn
V. Keyes

                                                                   Justice


 

Panel
consists of Justices Keyes, Sharp, and Massengale.