**Mitchell Jay HUSSONG, Appellant,**

v.

**SCHWAN'S SALES ENTERPRISES, INC. and Jeff Jones, Appellees.**

No. 01–94–00625–CV.

Court of Appeals of Texas, Houston (1st Dist.).

March 9, 1995.

Robert E. Perman, Houston, for appellant.

Linda C. Schoonmaker, Houston, for appellees.

Before HUTSON–DUNN, ANDELL and PRICE,* JJ.

## OPINION ON MOTION FOR REHEARING

HUTSON–DUNN, Justice.

The appellant's motion for rehearing is granted. We withdraw our prior opinion and substitute the following in its place.

Mitchell Jay Hussong appeals from a take-nothing summary judgment rendered in favor of Schwan's Sales Enterprises, Inc., and Jeff Jones. Hussong sued Schwan's and Jones for breach of his employment contract with Schwan's and tortious interference with the same contract. The trial court granted the defendants' motion for summary judgment and dismissed Hussong's claims with prejudice. We affirm the judgment of the trial court.

## I. Facts

On June 1, 1989, Hussong and Schwan's entered into a written employment contract whereby Hussong agreed to work for Schwan's as a sales manager at its Brookshire, Texas, depot. Hussong was to receive a weekly salary and a possible weekly commission. The agreement would automatically renew each year unless terminated pursuant to sections XIX or XX of the contract. Section XIX gave Schwan's the authority to terminate Hussong's employment immediately "for cause," with cause defined in several ways.[1] Further, section XX provided for "voluntary termination" by either party as follows:

> The Employee's employment under this Agreement may be voluntarily terminated without cause by the Regional Manager of Employer, giving thirty (30) days prior written notice to the Employee or by the Employee giving not less than thirty (30) days prior written notice to the Regional Manager of Employer.

The contract also provided that, "upon the employer voluntarily terminating Employee's employment, the Employee shall receive as severance pay the sum of $10,000."

On March 25, 1992, Hussong's employment with Schwan's ended. Hussong claims that he was fired by Jones, Schwan's divisional sales manager, and the appellees contend that Hussong quit. Nevertheless, for the purpose of their summary judgment only, the appellees concede that Hussong was fired. After terminating Hussong, Schwan's paid him the full amount of severance pay provided for in his contract.

Hussong sued the appellees on August 20, 1992. He alleged that Schwan's breached the employment contract. Additionally, Hussong asserted the following causes of action against both Schwan's and Jones: (1) tortious interference with the employment contract; and (2) conspiracy to tortiously interfere with the employment contract.

The appellees moved for summary judgment on all of Hussong's claims, and the trial court conducted a hearing on the motion on April 11, 1994. Approximately one month after the hearing, but prior to the court's ruling on the motion, Hussong filed his first amended original petition. There is no evidence in the record that Hussong obtained the court's permission to file this petition. Hussong's amended petition deleted his causes of action against both appellees for conspiracy to tortiously interfere with the employment contract. Additionally, instead of alleging that Schwan's tortiously interfered with the contract, the petition alleged the following: (1) Jones, while acting within the course and scope of his employment, tortiously interfered with the Hussong–Schwan's contract; and (2) Schwan's ratified Jones' conduct.

On May 17, 1994, the trial court granted the appellees' motion for summary judgment and dismissed Hussong's claims with prejudice. In his only point of error, Hussong

---

* The Honorable Frank C. Price, former Justice, Court of Appeals, First District of Texas at Houston, sitting by assignment.

1. Specifically, the contract defined "cause" as follows: (1) dishonesty; (2) being under the influence of alcohol or non-prescriptive hallucinogenic drugs while conducting company business during regular business hours; (3) failure to comply with company rules, regulations, and policies; and (4) breach of any covenant or condition of the contract.

argues that the trial court erred in granting this motion.

## II. Scope of Review

Before examining whether the trial court erred in granting the appellees' motion for summary judgment, we first determine what claims we may consider as a basis for reversing the judgment. As noted, after the court's hearing on the motion for summary judgment, but before the court entered its order, Hussong amended his pleadings to: (1) delete his conspiracy causes of action; (2) delete his claim that Schwan's tortiously interfered with the Hussong–Schwan's contract; and (3) add allegations that Schwan's ratified Jones' tortious interference with the Hussong–Schwan's contract.

▬ When this court reviews the granting of a summary judgment, issues not expressly presented to the trial court in the written summary judgment motion, answer, or other response cannot be considered on appeal as grounds for reversal. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 677 (Tex.1979); Tex.R.Civ.P. 166a(c)(ii). The mere filing of an amended petition after a motion for summary judgment is filed does not constitute a response to the motion. *Clear Creek Basin Auth.*, 589 S.W.2d at 678. Further, a trial court can only consider pleadings and proof on file at the time of the hearing, or filed after the hearing and before judgment with the permission of the court. *Leinen v. Buffington's Bayou City Serv.*, 824 S.W.2d 682, 685 (Tex. App.—Houston [14th Dist.] 1992, no writ).

▬ The record does not show that Hussong obtained leave of court to file his amended pleading, or even brought it to the court's attention so as to be considered on the motion for summary judgment. *See Leinen*, 824 S.W.2d at 685. Further, the court's judgment specifically stated that it only considered *prior* pleadings referenced in the motion for summary judgment, all responses, and the summary judgment evidence. A trial court does not abuse its discretion by refusing to consider summary

judgment pleadings filed after the summary judgment hearing. *Id.* Therefore, the following claims from Hussong's original petition are before us for review: (1) Schwan's alleged breach of its employment contract with Hussong; and (2) Jones' alleged tortious interference with the Hussong–Schwan's contract.[2]

## III. Standard of Review

To obtain a summary judgment, the movant must establish that there are no issues of material fact and that it is entitled to judgment as a matter of law. *Nixon v. Mr. Property Mgmt.*, 690 S.W.2d 546, 548 (Tex. 1985); Tex.R.Civ.P. 166a(c). In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the nonmovant will be taken as true. *Nixon*, 690 S.W.2d at 548–49. Every reasonable inference must be indulged in favor of the nonmovant and any doubts resolved in its favor. *Id.*

## IV. Analysis

We now consider whether the trial court erred by granting the appellees' motion for summary judgment on the claims that are properly presented before this court for appellate review.

### A. The Breach of Contract Claim Against Schwan's

Neither party to this appeal contends that Hussong's alleged termination occurred pursuant to the "for cause" provision of the Hussong–Schwan's contract. Therefore, we consider whether the trial court erred in rendering summary judgment based upon the "voluntary termination" provision of the contract. As noted, the contract in this case provided that Hussong's employment could be voluntarily terminated without cause if Schwan's regional manager gave 30 days prior written notice to Hussong. Hussong interprets this clause to mean that both parties had to voluntarily consent to Hussong's termination upon the giving of a 30–day notice

---

**2.** Hussong does not contend that the trial court erred in rendering summary judgment against his claims that Schwan's *directly* interfered with the Hussong–Schwan's contract and that Schwan's and Jones conspired to tortiously interfere with the contract.

by Schwan's regional manager. He bases his claim on three theories: (1) the Hussong–Schwan's contract was ambiguous; (2) the contract was not terminable at will and good cause for discharge had to be shown by Schwan's; and (3) the doctrine of *ejusdem generis* raised a substantial question as to the parties' intent. Hussong additionally contends that the trial court erred in granting Schwan's motion for summary judgment on his breach of contract claim because a question of fact exists as to whether Schwan's gave him 30–days written notice before terminating his employment as required by the voluntary termination clause of the contract.

### 1. The Hussong–Schwan's Contract is Not Ambiguous

In determining whether summary judgment is proper based upon a contract, the trial court must first determine whether the contract is ambiguous. Language used by parties should be accorded its plain, grammatical meaning unless it definitely appears that the intention of the parties would thereby be defeated. *Reilly v. Rangers Mgmt., Inc.*, 727 S.W.2d 527, 529 (Tex.1987); *Lyons v. Montgomery*, 701 S.W.2d 641, 643 (Tex.1985). If the contract is worded so that it can be given a certain and definite meaning or interpretation, it is not ambiguous; the court will construe the contract as a matter of law. *GT & MC, Inc. v. Texas City Ref. Inc.*, 822 S.W.2d 252, 255–56 (Tex.App.—Houston [1st Dist.] 1991, writ denied). To the contrary, when the contract contains an ambiguity, the granting of a motion for summary judgment is improper because the interpretation of the instrument becomes a fact issue. *Coker v. Coker*, 650 S.W.2d 391, 394 (Tex.1983).

We find that the "voluntary termination" provision in the Hussong–Schwan's contract is not ambiguous. This provision clearly states that Schwan's regional manager could voluntarily terminate Hussong's em-

ployment without cause by giving 30 days prior written notice to Hussong. Hussong cites no authority to support his argument that the word "voluntarily" in this contract should be construed to mean that both parties had to agree before Schwan's could fire him.[3]

### 2. The "Good Cause" Contention

Alternatively, Hussong contends that, because his contract with Schwan's was for a definite term, it was not terminable at will as a matter of law despite the "voluntary termination" provision.

Texas is an employment at will state. *Molder v. Southwestern Bell Tel. Co.*, 665 S.W.2d 175, 177 (Tex.App.—Houston [1st Dist.] 1983, writ ref'd n.r.e.). Thus, when a term of service is left to the discretion of either party, or the term is left indefinite, *or terminable by either party*, either may end the employment at will without cause. *Webber v. M.W. Kellog Co.*, 720 S.W.2d 124, 127 (Tex.App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.) (quoting *East Line & R.R.R. Co. v. Scott*, 10 S.W. 99, 102 (Tex.1888)). However, in the absence of special circumstances, Texas also follows the rule that a contract of employment for a term, as opposed to "at will," can only be terminated upon a showing of good cause for the discharge. *Lee–Wright, Inc. v. Hall*, 840 S.W.2d 572, 578 (Tex.App.—Houston [1st Dist.] 1992, no writ).

A discharged employee who claims that the parties have contractually agreed to limit the employer's right to terminate the employee at will has the burden of proving an express agreement or written representation to that effect. *Hall*, 840 S.W.2d at 577 (citing *Totman v. Control Data Corp.*, 707 S.W.2d 739, 744 (Tex.App.—Fort Worth 1986, no writ)). The writing must, *"in a meaningful and special way,"* limit the employer's right to terminate the employ-

---

**3.** The "voluntary termination" provision of the Hussong–Schwan's contract also stated that Hussong could voluntarily terminate his employment with Schwan's by giving not less than 30 days prior written notice to Schwan's regional manager. Despite this language, which mirrored the "voluntary termination" option given to Schwan's in the same provision, Hussong testified in deposition that he could voluntarily terminate his contract with Schwan's upon giving prior written notice even if they did not agree.

ment at will. *Hall,* 840 S.W.2d at 577 (citing *Benoit v. Polysar Gulf Coast, Inc.,* 728 S.W.2d 403, 406 (Tex.App.—Beaumont 1987, writ ref'd n.r.e.)). A hiring based upon an agreement of an annual salary limits in a meaningful and special way the employer's prerogative to discharge the employee during the period of employment. *Hall,* 840 S.W.2d at 577 (citing *Winograd v. Willis,* 789 S.W.2d 307, 310 (Tex.App.—Houston [14th Dist.] 1990, writ denied)).

■■■ In *Hall,* we held that the appellant, an employee, sustained his burden of proving that his employment contract limited in a meaningful and special way the employer's right to terminate his employment. 840 S.W.2d at 578. In that case, the parties entered an employment contract for a definite term that provided that the agreement would become null and void if the employee left the company. *Id.* at 576. The employee was injured on the job, and after his employment was subsequently terminated as a result of the injury, the employee sued his employer for wrongful termination. *Id.* at 575–76. On the employer's appeal of a damage award in favor of the employee, this Court held that, because the employee had sustained his burden of showing that his employment contract limited the employment at will doctrine, the trial court did not err in submitting a jury question regarding good cause. *Id.* at 577–78.

We find *Lee–Wright* distinguishable from the facts of the present case because the contract in that case, unlike the present case, did not contain a provision that permitted the employer to voluntarily terminate his employee without cause. Nevertheless, appellant asserts that this Court should follow New York law, which holds that a contract of employment for a definite term may not be terminated by an employer prior to its expiration date absent a showing of just cause, even where the contract by its terms purports to reserve to the employer the right to terminate the contract. *Rothenberg v. Lincoln Camp, Inc.,* 755 F.2d 1017, 1021 (2nd Cir.1985); *Carter v. Bradlee,* 245 A.D. 49, 50, 280 N.Y.S. 368, 370 (1st Dep't 1935), *aff'd,* 269 N.Y. 664, 200 N.E. 48 (1936) (per curiam). We are not persuaded by these cases,

and appellant has cited no Texas authority to support his contention.

Therefore, we find that, because of the "voluntary termination" provision in the Hussong–Schwan's contract, Schwan's did not have to show good cause to terminate Hussong's employment.

### 3. The Doctrine of *Ejusdem Generis*

■■■ The doctrine of *ejusdem generis* is a rule of contract construction that provides that, if words of a specific meaning are followed by general words, the general words are interpreted to mean only the class or category framed by the specific words. *Stanford v. Butler,* 181 S.W.2d 269, 272 (Tex. 1944); *Jones v. St. Paul Ins. Co.,* 725 S.W.2d 291, 292 (Tex.App.—Corpus Christi 1986, no writ). As noted, section XIX of the Hussong–Schwan's contract provided for specific grounds upon which Hussong could be terminated for cause, and section XX stated that Schwan's regional manager could terminate Hussong without cause. Hussong contends that, because the specific grounds for terminating his employment under section XIX of the contract precede the general language of the "voluntary termination" provision of section XX, a question of fact exists as to whether the parties intended section XX to be limited by the specific grounds enumerated in section XIX.

The doctrine of *ejusdem generis* applies only when the contract is ambiguous. *See Corpus Christi v. Bayfront Assoc.,* 814 S.W.2d 98, 104 (Tex.App.—Corpus Christi 1991, writ denied). It does not apply when the parties' intent is apparent. *See id.* Since we have already concluded that the "voluntary termination" provision of the Hussong–Schwan's contract is not ambiguous, we need not apply *ejusdem generis* to this case.

### 4. The Written Notice Provision

Hussong submitted an affidavit with his response to Schwan's motion for summary judgment in which he stated that Schwan's did not give him 30–days written notice before terminating his employment as required by the voluntary termination provision of the Hussong–Schwan's contract. Additionally,

he stated that he did not waive his right to receive 30 days notice, and Schwan's admitted to him that he did not settle with them by accepting termination pay. In its reply to Hussong's response, Schwan's offered no evidence to controvert his affidavit. However, Schwan's argued that it did not breach its contract with Hussong since it paid him wages in lieu of notice for the notice period required by the contract.

The essential elements in a suit for breach of contract are: (1) the existence of a valid contract; (2) that the plaintiff performed or tendered performance; (3) that the defendant breached the contract; and (4) that the plaintiff was damaged as a result of the breach. *Landrum v. Devenport,* 616 S.W.2d 359, 361 (Tex.Civ.App.—Texarkana 1981, no writ); *Bradley v. Houston State Bank,* 588 S.W.2d 618, 624 (Tex.App.—Houston [14th Dist.] 1979, writ ref'd n.r.e.). Thus, when an employment contract requires a certain period of notice, the employment may be cancelled on shorter notice or upon none at all if the employee is paid wages or salary for the specified notice period. *See Stolz v. Wells,* 43 S.W.2d 163, 164–65 (Tex.Civ.App.—Beaumont 1931, no writ); SAMUEL WILLISTON, A TREATISE ON THE LAW OF CONTRACTS, § 1017 (3rd Ed.1967).

The summary judgment evidence before the trial court shows that Schwan's paid Hussong the money that he would have received had he worked for 30 additional days after learning that his employment had been terminated. In his deposition, Hussong stated that he received $10,000 severance pay pursuant to the employment contract. Further, he admitted that he received payment for 30 days in lieu of notice under section XX of the contract. Therefore, we find that the summary judgment evidence presented no material fact issue regarding whether Hussong received payment in lieu of notice.

We find that Schwan's conclusively proved that it did not breach its employment contract with Hussong. Therefore, the trial court did not err in granting the appellees' motion for summary judgment on Hussong's breach of contract claim against Schwan's.

## B. The Tortious Interference With Contract Claim Against Jones

The summary judgment evidence that Hussong placed before the court with his response to the appellees' motion for summary judgment on his tortious interference claim establishes the following: Jones took over as divisional manager of Schwan's after Hussong got a job as sales manager. Jones became Hussong's immediate supervisor. During a three year period that Hussong worked as a sales manager under Jones, Jones displayed hostility toward Hussong on over 100 occasions by using profanity and acting violently toward Hussong when talking to him about his job. Jones fired Hussong for the following reasons: First, Jones wanted to replace Hussong with people that he liked. Secondly, Jones knew that by firing Hussong and replacing him with one of Jones' "people," Hussong would be financially hurt. Finally, Jones could increase his own personal profit by hiring a sales manager who was willing to receive a lower commission than Hussong had received.

It is well settled that one cannot tortiously interfere with one's own contract. *Schoellkopf v. Pledger,* 778 S.W.2d 897, 902 (Tex.App.—Dallas 1989, writ denied). "Liability for tortious interference is founded only on the acts of an interfering third party." *Id.* In the recent case of *Johnson v. Randall's Food Markets, Inc.,* 869 S.W.2d 390, 400 (Tex.App.—Houston [1st Dist.] 1993), *rev'd on other grounds,* 38 Tex.Sup. Ct.J. 167 (Jan. 12, 1995), this Court confronted the issue of whether the above cited rule applies to situations where an agent interferes with a contract between his principal and a third party. In that case, Johnson sued Randall's Food Markets, Inc., and many of its agents and employees at its Galveston store. *Id.* at 393. The trial court granted summary judgment to the defendants on all claims asserted, including a claim for tortious interference with contract. *Id.* This Court affirmed the summary judgment as to the tortious interference claim. *Id.* at 400. In doing so, we noted that all of Johnson's allegations involved conduct of persons who were either Randall's employees or agents at the time the conduct allegedly occurred, and all

of the complained conduct occurred within the course and scope of the employees' and agents' service to Randall's. *Id.* at 400. Thus, we noted that Johnson's claim fell within the rule that one cannot tortiously interfere with one's own contract. *Id.* at 400.

 Our holding in *Johnson* was consistent with a line of cases that have held that an agent cannot be personally liable for tortious interference with its principal's contracts. *See, e.g., John Masek Corp. v. Davis,* 848 S.W.2d 170, 175 (Tex.App.—Houston [1st Dist.] 1992, writ denied); *Baker v. Welch,* 735 S.W.2d 548, 549 (Tex.App.—Houston [1st Dist.] 1987, writ dism'd w.o.j.). The rationale of these cases is that the agent and the principal are treated as one entity since the agent is the principal's "alter ego" and both individuals have the same financial interest. *Masek,* 848 S.W.2d at 175; *Baker,* 735 S.W.2d at 549.

Nevertheless, Hussong asserts that an agent's or employee's immunity from suit for tortious interference with a contract between his employer and a third party is limited to situations where the agent or employee acts in good faith and believes that what he does is best for the principal or employer. *Eloise Bauer & Assocs., Inc. v. Electronic Realty Assocs., Inc.,* 621 S.W.2d 200, 203 (Tex. App.—Texarkana 1981, writ ref'd n.r.e.). He contends that, when an employee induces his employer to breach a contract with a third person out of malice or his own interests, the inducement is not privileged. *Id.*

Hussong cites no case that involves a supervisor's termination of an at-will subordinate. This Court has expressly declined to examine a manager's reason for terminating an at-will employee. *Jones v. Legal Copy, Inc.,* 846 S.W.2d 922, 925 (Tex.App.—Houston [1st Dist.] 1993, no writ). In *Jones,* we held that the at-will doctrine effectively barred a tortious interference with contract claim against a manager based on his decision to discharge an employee. *Id.* (citing *Sabine Pilot Serv., Inc., v. Hauck,* 687 S.W.2d 733, 735 (Tex.1985)).

Since we have already concluded that Hussong's employment was terminable at will pursuant to his contract with Schwan's, we find that the trial court did not err in granting the appellees' motion for summary judgment as to Hussong's tortious interference claim against Jones.

We affirm the judgment of the trial court.