# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

_____

## No. 95-50889
_____

GARY L. SOUTER,

                                       Plaintiff-Appellant,

versus

SCOTT & WHITE MEMORIAL HOSPITAL,
SCOTT, SHERWOOD & BRINDLEY FOUNDATION,
SCOTT & WHITE CLINIC, and ROBERT MASON,

                                       Defendants-Appellees.

_____

### Appeals from the United States District Court
### For the Western District of Texas
### (94-CV-104)
_____

December 31, 1996

Before POLITZ, Chief Judge, and WIENER and STEWART, Circuit Judges.

PER CURIAM:[*]

      Plaintiff-Appellant, Gary L. Souter, appeals the district court's (1) summary judgment for Defendant-Appellee, Robert S. Mason, holding that as a matter of Texas law, Mason could not be liable for tortious interference with Souter's employment contract and (2) judgment, based on the jury's verdict, that Souter take nothing from Defendants-Appellees Scott & White Memorial Hospital;

---

     [*]Pursuant to Local Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in Local Rule 47.5.4.

Scott, Sherwood & Brindley Foundation; and Scott & White Clinic (collectively, S & W). Agreeing that Mason cannot be held personally liable for tortious interference with Souter's employment contract, we affirm the district court's grant of summary judgment. Additionally, as the district court properly instructed the jury on the elements of pretext and causation and did not abuse its discretion in its evidentiary rulings, we affirm the take nothing judgment in favor of S & W.

I.

FACTS AND PROCEEDINGS

Souter was employed by S & W as Assistant Administrator of Personnel from July 1990 until his employment was terminated by S & W, effective November 1993. Souter's direct supervisor at the Hospital was Mason, and his direct supervisor at the Clinic was Chuck Gendron.

While employed at S & W, Souter became concerned about (1) certain employment practices that he, in good faith, believed discriminated against minority applicants and employees insofar as they disproportionately affected such persons when they sought employment and advancement at S & W, (2)individual complaints of discrimination brought to his attention by his department's employees, and (3) the absence of an affirmative action plan at S & W. In an attempt to ameliorate the situation at S & W, Souter developed personnel policies that standardized the creation of positions, the assignment of salary grades, the posting and

2

advertising of positions, the screening of applicants based on qualifications, and the tracking of candidates for positions. Souter alleged that Mason and other S & W administrators resisted the implementation of these policies and frequently violated them.

In the summer of 1993, Mason announced his retirement, effective September 1993. S & W hired Gary Morrison as Mason's successor, and Morrison began to work in that position one month before Mason left. At about the same time that he announced his impending retirement, Mason began an investigation of Souter. Dr. Robert Myers, President of Scott & White Hospital, participated in portions of the investigation and encouraged Mason to write a report on Souter before leaving S & W. Mason submitted a memo to Myers in which Mason recommended a "thorough discussion before considering Mr. Souter's continued employment."

Myers then appointed Gendron and Morrision to conduct an investigation into the advisability of continuing Souter's employment. Souter was not notified of the investigation by Mason, Myers, Gendron, or Morrison. After hearing rumors that his employment was in jeopardy, however, Souter confronted Myers who acknowledged, without revealing any specific information, that an investigation was pending but denied that any written document had precipitated the investigation. Souter expressed his opinion to Myers that any complaints that Myers may have received were undoubtedly related to personnel policies that Souter had created and enforced. After consulting with the Hospital's legal counsel,

3

Myers wrote a letter to Souter in which he refuted Souter's concerns and advised that the investigation was department-wide rather than individually directed.

But by October 1993, Souter had learned of the existence of Mason's memo and of the mendacity of Myers' denial of its existence. Before commencing any substantive litigation, Souter filed a petition in Texas state court to perpetuate Mason's deposition testimony, as Souter was aware of Mason's impending move to California and anticipated that Mason's actions or statements ultimately could cost Souter his job at S & W.

Meanwhile, Gendron and Morrison, who were still unaware of Souter's "lawsuit," met and decided to allow Souter's employment with S & W to continue. They informed Myers of their decision that day. Myers subsequently learned of Souter's "lawsuit," however, and after a second meeting, Gendron and Morrison informed Souter that his employment was being terminated. The reason for his termination ultimately became the subject of the instant litigation. According to S & W, it terminated Souter's employment after concluding that Souter's perpetuation of Mason's testimony reflected poor judgment, vindictiveness, and a breach of trust with the management team, thereby destroying the ability of the management team to work effectively with Souter. According to Souter, however, S & W's proffered reason was pretextual, and he was actually fired for opposing employment practices that he deemed to be unlawfully discriminatory.

4

Souter filed his original complaint in the district court against Mason, individually, alleging tortious interference with employment, defamation, and retaliation under Title VII. Souter later amended his complaint to add S & W as a defendant, alleging Title VII claims of retaliation and compensation discrimination. The district court originally granted Mason's motion for summary judgment on all claims except the claim of tortious interference, but subsequently granted Mason's second motion for summary judgment on the tortious interference claim as well as S & W's motion for summary judgment on Souter's Title VII discrimination claims.

The remainder of the case, consisting only of Souter's Title VII retaliation claim against S & W, was tried to a jury. It returned a verdict that S & W did not terminate Souter in retaliation for opposing allegedly discriminatory employment practices at S & W. The district court entered judgment that Souter take nothing from S & W and assessed costs to Souter. He timely appealed.

On appeal, Souter maintains that (1) the district court erred in granting Mason's motion for summary judgment on the tortious interference claim as there was sufficient evidence to raise a factual issue whether Mason acted with actual malice in violation of his qualified privilege to terminate Souter's employment, (2) the district court's instructions to the jury did not properly state Souter's burden of proof of pretext or his burden of proof of causation in his Title VII retaliation claim and that the erroneous

5

instructions affected the outcome of his case, and (3) the district court erroneously excluded evidence that was relevant to Souter's Title VII retaliation claim.

II.

ANALYSIS

A. Tortious Interference With Contract

*1. Standard of Review*

We review a grant of summary judgment de novo, using the same standards as the district court. Summary judgment must be granted if the court, viewing the facts and inferences in the light most favorable to the non-moving party, determines that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[2] If any element of the plaintiff's case lacks factual support, a district court should grant a defendant's motion for summary judgment.[3]

*2. No cause of action against Mason*

The district court held that, under Texas law, Mason could not

_____

[2]Burden v. General Dynamics Corp., 60 F.3d 213, 216 (5th Cir. 1995)(citing Fed. R. Civ. P. 56(c)).

[3]Id.

6

be held liable for tortious interference with Souter's employment contract. As Souter's supervisor, Mason was S & W's agent, and an agent cannot be held liable for tortious interference with his principal's contract.

To assert a tortious interference claim successfully, the plaintiff must prove that (1) a contract subject to interference exists, (2) the act of interference was willful and intentional, (3) such intentional act was a proximate cause of the plaintiff's damage, and (4) actual damage or loss occurred.[4] Even though Texas is an employment-at-will state,[5] an at-will employment agreement can be the subject of a claim of tortious interference with contract.[6] As a matter of Texas law, however, one cannot tortiously interfere with his own contract; liability for tortious interference requires the acts of an interfering third party.[7] Generally, an agent is not regarded as being a third party but

_____

[4]Johnson v. Hospital Corp. of America, 95 F.3d 383, 394 (5th Cir. 1996)(citing Victoria Bank & Trust Co. v. Brady, 811 S.W.2d 931, 939 (Tex. 1991)).

[5]Schroeder v. Texas Iron Works, Inc., 813 S.W.2d 483, 489 (Tex. 1991).

[6]Sterner v. Marathon Oil Co., 767 S.W.2d 686, 688 (Tex. 1989).

[7]Hussong v. Schwan's Sales Enterprises, Inc., 896 S.W.2d 320, 326 (Tex. App.-Houston [1st Dist.] 1995, no writ)(citing Schoellkopf v. Pledger, 778 S.W.2d 897, 902 (Tex. App.-Dallas 1989, no writ)); American Medical Int'l, Inc. v. Giurintano, 821 S.W.2d 331, 335 (Tex. App.-Houston [14th Dist.] 1991, no writ)(citing Baker v. Welch, 735 S.W.2d 548, 549 (Tex. App.-Houston [1st Dist.] 1987, writ dism'd)).

rather as having the legal identity of his principal.[8]  Therefore, an agent cannot be personally liable for tortious interference with his principal's contracts.[9]

A supervisor is considered to be an agent of the employer.[10] It follows that the agent/supervisor and the principal/employer are considered to be one entity; the agent is the principal's alter ego, and both have the same financial interests.[11]  Consequently, an agent/supervisor who terminates an employee cannot be held liable for tortious interference with an employment contract between the employee and the principal/employer.

Souter nevertheless maintains that Mason tortiously interfered with the employment contract between Souter and S & W when Mason submitted the memo to Myers that questioned Souter's continued employment.  At that time, Mason was Souter's direct supervisor, and he had the authority to terminate Souter as well as to conduct investigations of his employment and to relay negative reports to other members of the management staff.  In the capacity of Souter's supervisor, Mason was S & W's agent.  As S & W cannot be liable for

---

[8]American Medical, 821 S.W.2d at 335.

[9]John Masek Corp. v. Davis, 848 S.W.2d 170, 175 (Tex. App.-Houston [1st Dist.] 1992, writ denied); Massey v. Houston Baptist University, 902 S.W.2d 81, 85 (Tex. App.-Houston [1st Dist.] 1995, writ denied).

[10]See Hussong, 896 S.W.2d at 326.

[11]Massey, 902 S.W.2d at 85; Hussong, 896 S.W.2d at 326-27; Masek, 848 S.W.2d at 175.

tortiously interfering with its own employment contract with Souter, neither can its agent, Mason, be liable for tortiously interfering with S & W's employment contract with Souter.

And if that were not enough, the defendant to a tortious interference claim may also assert an affirmative defense of justification based on the exercise of his own legal rights.[12] This privilege is absolute if the defendant acted within his legal rights. Accordingly, there can be no examination into such a defendant's motive or good faith, but only into whether he acted within his legal rights. Under Texas' employment-at-will doctrine, a supervisor is within his legal rights to interfere with an at-will employee's employment contract.[13] A court cannot inquire into a superior's reason for terminating his supervised employee. An employer is not required to make a termination decision in good faith; in fact, the privilege of termination is not lost even when the superior acts out of malice or personal motive.[14]

We reject out of hand Souter's argument that Mason lost his privilege to interfere with Souter's employment when he allegedly

---

[12]A defendant to a tortious interference claim also has an affirmative defense of justification based on a good faith claim to a colorable legal right even though that claim ultimately proves to be mistaken. See Johnson v. Hospital Corp. of America, 95 F.3d 383, 394 (5th Cir. 1996)(discussing our recent clarification of the relationship between a defendant's good faith and his affirmative defense of justification).

[13]Hussong, 896 S.W.2d at 327; Jones v. Legal Copy, Inc., 846 S.W.2d 922, 925 (Tex. Ct. App.-Houston [1st Dist.] 1993, no writ).

[14]Hussong, 896 S.W.2d at 327.

acted with personal animosity and purely for personal gain. The affirmative defense of justification, based on Mason's exercise of his legal rights in terminating an at-will employee, forecloses any inquiry whatsoever into Mason's bona fides in terminating Souter. Texas courts have expressly held that the at-will doctrine bars a tortious interference claim against a manager based on his decision to terminate an employee,[15] and those courts have extended this rule to cover a tortious interference claim against a supervisor who terminates an at-will employee.[16] Based on existing precedent and Texas' employment-at-will doctrine, Mason acted within his legal rights in terminating Souter's employment and therefore may avail himself of the absolute privilege of justification without being subject to an inquiry into his good faith.

B. JURY INSTRUCTIONS

The jury found, by a preponderance of the evidence, that Souter was not terminated by S & W in retaliation for opposing employment practices that he deemed to be unlawfully discriminatory. On appeal, Souter challenges the jury instructions which recited his burden of proof of pretext and causation, asserting that the purportedly erroneous instructions affected the jury's verdict. Our review of the jury instructions, both as a whole and as to those specifically challenged, satisfies us that

---

[15]Jones, 846 S.W.2d at 925.

[16]Hussong, 896 S.W.2d at 327.

10

the district court properly instructed the jury on the applicable law.

Broad discretion is afforded to the trial court in fashioning jury instructions, and we review them for an abuse of discretion.[17] We are specifically guided as follows:

> First the challenger must demonstrate that the charge as a whole creates 'substantial and ineradicable doubt whether the jury has been properly guided in its deliberations.' Second, even if the jury instructions were erroneous, we will not reverse if we determine, based upon the entire record, that the challenged instruction could not have affected the outcome of the case.[18]

Souter's claims that the jury instructions imposed on him a heavier burden of proof than is required by law to prove the elements of pretext and causation are completely without merit. First, the wording of the jury instruction on the element of pretext is essentially identical to the language of St. Mary's Honor Center v. Hicks,[19] which sets forth the requirements for proving pretext in the context of a motion for summary judgment in a Title VII discrimination case. According to St. Mary's, "a reason cannot be proved to be a 'pretext *for discrimination*' unless it is shown *both* that the reason was false, *and* that discrimination

---

[17]EEOC v. Manville Sales Corp., 27 F.3d 1089, 1096 (5th Cir. 1994), cert. denied, ___ U.S. ___, 115 S. Ct. 1252 (1995).

[18]FDIC v. Mijalis, 15 F.3d 1314, 1318 (5th Cir. 1994)(quoting Bender v. Brumley, 1 F.3d 271, 276-77 (5th Cir. 1993))(citations omitted).

[19]509 U.S. 502, 113 S. Ct. 2742 (1993)(emphasis in original).

was the real reason."[20]  Correspondingly, the district court's instruction to the jury here stated: "A reason is pretextual only if the Plaintiff shows both that the reason was false and that retaliation was the real reason for Defendants' actions."[21]

Even though the instant case was not decided on a motion for summary judgment but rather at a full blown jury trial on the issue of Souter's termination, the elements that Souter was required to prove to the jury are identical to those that he would have had to show to defeat a motion for summary judgment.  We have previously recognized that the elements and the burden of proof in a Title VII <u>discrimination</u> case are the same in a Title VII <u>retaliation</u> case, except that the plaintiff in a retaliation case ultimately must prove that activity protected under Title VII caused him to be unlawfully retaliated against rather than proving that he was unlawfully discriminated against.[22]  Both the language of <u>St. Mary's</u> and the instant jury instruction on the element of pretext require the plaintiff to prove the falsity of the defendant's proffered benign reason and the true reason for the termination or discrimination.  In reciting practically verbatim the language of <u>St. Mary's</u>, the jury instruction accurately charged the jury on

---

[20]<u>Id</u>. at 2752.

[21]Emphasis added.

[22]<u>See</u> <u>McMillan v. Rust College, Inc.</u>, 710 F.2d 1112, 1116 (5th Cir. 1983); <u>Long v. Eastfield College</u>, 88 F.3d 300, 304-05 (5th Cir. 1996).

Souter's burden for proving pretext.

Second, the jury instruction on causation properly states Souter's burden of proof on that element, as set forth in our recent decision in <u>Long v. Eastfield College</u>.[23]   In <u>Long</u>, we confirmed that the ultimate determination in an unlawful retaliation case is whether the conduct protected by Title VII was a "but for" cause of the adverse employment decision.[24]   The jury instruction here is wholly consistent with our pronouncement in <u>Long</u>, as it states that Souter must prove that retaliation was "a determining factor" in S & W's decision to terminate his employment, then defines "a determining factor" to mean that "the termination would not have occurred *but for* [Souter's] opposing alleged unlawful discriminatory employment practices by [S & W]."[25] Thus the district court properly instructed the jury on Souter's burden of proof on the element of causation.

C. EXCLUSION OF EVIDENCE

Souter claims that the district court erred in excluding evidence of Souter's complaints of unlawfully discriminatory practices at S & W.  We review evidentiary rulings of the district

---

[23]88 F.3d 300 (5th Cir. 1996).

[24]<u>Id</u>. at 305, n.4 (citing <u>McDaniel v. Temple Indep. Sch. Dist.</u>, 770 F.2d 1340, 1346 (5th Cir. 1985)), 308 (citing <u>McMillan</u>, 710 F.2d at 1116).

[25]Emphasis added.

13

court under the deferential abuse of discretion standard.[26]  Our careful review of the court's rulings on the admission and exclusion of evidence during the trial of this case reflects nothing to show that the district court abused its discretion.

III.

CONCLUSION

Reviewing the jury instructions as a whole — and specifically the ones addressing the law on unlawful retaliation — and the evidence in the record, we conclude that, notwithstanding Souter's proof, a reasonable jury could have found that S & W's evidence carried the day with a valid, non-retaliatory, non-pretextual, believable, and benign reason for Souter's termination.  In short, a reasonable jury could have found that Souter was not fired in retaliation for his opposition to employment practices at S & W which he in good faith believed to be unlawfully discriminatory. Absent that kind of retaliation, S & W is protected by Texas' at-will employment doctrine.  The jury instructions fairly recited the applicable law, and the jury's verdict is consistent with both the instructions and the evidence in the record.  As for Mason, he cannot be held liable for tortious interference with S & W's employment contract with Souter: An agent cannot tortiously interfere with his principal's contracts; moreover, a supervisor enjoys absolute immunity when exercising his rights to hire and

---

[26]Kelly v. Boeing Petroleum Serv. Inc., 61 F.3d 350, 356 (5th Cir. 1995).

14

fire under the Texas employment-at-will doctrine.  Based on the foregoing conclusions, the judgments of the district court are AFFIRMED.