Opinion issued March 6, 2008







  






In The
Court of Appeals
For The
First District of Texas




NO. 01-06-00590-CV




PHILIP J. MCGEE, Appellant

V.

ABRAMS TECHNICAL SERVICES, INC. AND ABRAMS TECHNICAL
SERVICES INTERNATIONAL, INC., Appellees




On Appeal from the 215th District Court
Harris County, Texas
Trial Court Cause No. 2003-54414




MEMORANDUM OPINION
          Appellant, Phillip J. McGee, appeals from a summary judgment rendered in
favor of appellees, Abrams Technical Services, Inc. and Abrams Technical Services
International, Inc. (collectively “Abrams”). In his sole issue, McGee asserts that the
trial court erred by granting summary judgment in favor of Abrams on McGee’s
breach of contract claim. We conclude that the trial court properly granted summary
judgment because McGee presented no evidence of breach. We affirm the judgment
of the trial court.
Background
          In September 2002, McGee contacted Kevin Tolentino, a recruiter for Abrams,
about a potential job opportunity. Tolentino responded that El Paso Corporation, a
client of Abrams, was seeking a mechanical engineer to work on a project in Aruba. 
After discussing the position with Suren Chuckaree, a representative of El Paso,
McGee was hired for the position. McGee entered into an employment contract with
Abrams and then began working in Aruba that same month.
          The contract signed by the parties stated that the term of employment was one
year, subject to the terms of the agreement. The contract provided six circumstances
in which the employment contract could terminate prior to the one year term,
including (1) completion of the project as determined by Abrams; (2) for any reason
by either party during the two-month trial period; (3) for cause by Abrams;
(4) without cause by Abrams; (5) resignation by McGee; and (6) revocation or denial
of work permit. McGee stated that he understood these provisions of the contract.
          Once he arrived in Aruba, McGee had limited contact with Abrams, instead
being supervised by Chuckaree and other El Paso employees. In early November,
McGee asked Tolentino what he needed to do to take leave to be with his wife when
she gave birth to their child in Honduras in December. Tolentino responded that
McGee only needed to get permission from his supervisors at El Paso. McGee then
asked Chuckaree for permission to take a 17-day, unpaid leave. Chuckaree approved
McGee’s request for leave.
          Before leaving Aruba on leave, McGee met with Chuckaree to discuss the
status of all of his projects. McGee also ordered materials for one of his projects so
that he could “complete [the project] when [he] returned from [his] leave.” Prior to
leaving Aruba, McGee left no personal belongings at the office and moved out of the
house where he was living. McGee received payment for all of the hours he worked,
including the day he traveled to the United States on his way to Honduras. When
McGee arrived in Honduras, he learned that his wife had lost the baby that same day. 
          About a week after he arrived in Honduras, McGee emailed Chuckaree, with
a copy sent to Tolentino, to inform him that he was ready to return to work earlier
than expected because of his child’s stillbirth. Two days later, McGee emailed
Tolentino, stating that he had not received a response from Chuckaree and that he
“assume[d] that . . . there [was] no further interest in [his] services at the present
time.” Tolentino responded that he would follow up with Chuckaree to “find out if
they still need[ed his] services.”
          McGee spent the holidays with his wife and her family in Honduras. He
emailed Chuckaree again, with a copy to Tolentino, to “clarify” that he was still
available for work. The following day, he sent another email to Tolentino, stating
that he was “assuming that [his] services [we]re no longer required.” Tolentino
responded that he had not heard from Chuckaree and was not aware of any requests
by El Paso for services. Ted Abrams, the president of Abrams, stated that, after
receiving no response from Chuckaree, he determined McGee’s responsibilities on
the El Paso project in Aruba were completed in January.
          In April, McGee contacted Tolentino to verify Chuckaree’s email address, and
Tolentino responded that he had forwarded all of McGee’s emails to Chuckaree and
that “they may have just ran out of work.” McGee did not communicate further with
Chuckaree or Tolentino. Abrams has not sent, nor has it been asked to provide, a
mechanical engineer in Aruba, since McGee originally went in September 2002.
          In September 2003, McGee filed this suit, naming Abrams and El Paso as
defendants. In his suit, McGee asserted claims for breach of contract and vicarious
liability against Abrams, as well as claims for tortious interference with a contract,
intentional infliction of emotional distress, fraudulent misrepresentation, and
fraudulent inducement against both Abrams and El Paso. Abrams filed a motion for
summary judgment for all claims against it. The trial court granted the motion with
respect to McGee’s claims for breach of contract and intentional infliction of
emotional distress, but denied the motion as to all other claims. McGee nonsuited all
the remaining claims against Abrams, except the breach of contract that is the subject
of this appeal. McGee does not appeal the summary judgment for the claim for
intentional infliction of emotional distress. McGee and El Paso later jointly agreed
to dismiss with prejudice all claims against El Paso.Summary Judgment
          In his sole issue, McGee asserts that the trial court erred by granting summary
judgment in favor of Abrams on McGee’s breach of contract claim. We review
summary judgments de novo. Valence Operating Co. v. Dorsett, 164 S.W.3d 656,
661 (Tex. 2005). After adequate time for discovery, a party may move for summary
judgment on the ground that there is no evidence of one or more essential elements
of a claim. Tex. R. Civ. P. 166a(i). Once the movant specifies the elements on which
there is no evidence, the burden shifts to the nonmovant to raise a fact issue on the
challenged elements. Id. A grant of summary judgment under Rule 166a(i) will be
affirmed “when (1) there is a complete absence of evidence of a vital fact, (2) the
court is barred by rules of law or of evidence from giving weight to the only evidence
offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more
than a scintilla, or (4) the evidence conclusively establishes the opposite of a vital
fact.” King Ranch, Inc. v. Chapman, 118 S.W.3d 742, 751 (Tex. 2003) (internal
quotation marks omitted); Mathis v. RKL Design/Build, 189 S.W.3d 839, 844 (Tex.
App.—Houston [1st Dist.] 2006, no pet.). More than a scintilla of evidence exists
when the evidence “would allow reasonable and fair-minded people to differ in their
conclusions.” Forbes Inc. v. Granada Biosciences, Inc., 124 S.W.3d 167, 172 (Tex.
2003).
          To successfully assert a claim for breach of contract, a party must show (1) the
existence of a valid contract; (2) performance or tendered performance by the
plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by
the plaintiff as a result of the breach. Valero Mktg. & Supply Co. v. Kalama Int’l,
L.L.C., 51 S.W.3d 345, 351 (Tex. App.—Houston [1st Dist.] 2001, no pet.). Whether
a party has breached a contract is a question of law for the court. Meek v. Bishop,
Peterson & Sharp, P.C., 919 S.W.2d 805, 808 (Tex. App.—Houston [14th Dist.]
1996, writ denied). “A breach occurs when a party fails or refuses to do something
he has promised to do.” Dorsett v. Cross, 106 S.W.3d 213, 217 (Tex. App.—Houston
[1st Dist.] 2003, no pet.) (citing Townewest Homeowners Ass’n, Inc. v. Warner
Commc’n Inc., 826 S.W.2d 638, 640 (Tex. App.—Houston [14th Dist.] 1992, no
writ)).
          The trial court granted summary judgment on the grounds that McGee
produced no evidence of breach by Abrams. McGee asserts that he produced
evidence sufficient to raise an issue of material fact on the element of breach. 
Specifically, he contends he presented evidence that (A) the employment contract was
for a term of one year, he was not employed for one year, and therefore Abrams
breached the contract; (B) his projects were not complete, and therefore Abrams had
no grounds for termination under the “Project Completion” section of the
employment contract; and (C) Abrams breached the contract because it refused to
allow McGee to return to Aruba to complete his project. We address each of these
assertions.
A. Whether Contract Required Employment for One-Year Term
          We disagree with McGee’s assertion that the contract required him to be
employed for a one-year term and was breached by McGee’s failure to employ him
for one year. Although the agreement mentioned a one-year-term, the employment
arrangement described was an at-will employment relationship.
          Texas follows the employment-at-will doctrine. Montgomery County Hosp.
Dist. v. Brown, 965 S.W.2d 501, 502 (Tex. 1998). Thus, in an employment contract,
when a term of service is left to the discretion of either party, is left indefinite, or is
terminable by either party, either party may end the employment at will and without
cause. Hussong v. Schwan’s Sales Enters., Inc., 896 S.W.2d 320, 324 (Tex.
App.—Houston [1st Dist.] 1995, no writ). To show that a contract alters the at-will
employment relationship, “the writing must, ‘in a meaningful and special way,’ limit
the employer’s right to terminate the employment at will.” Id. at 324–25 (quoting
Lee-Wright, Inc. v. Hall, 840 S.W.2d 572, 577 (Tex. App.—Houston [1st Dist.] 1992,
no writ)). Further, the contract must “unequivocally indicate [the employer’s] definite
intent to be bound not to terminate the employee except under clearly specified
circumstances.” Brown, 965 S.W.2d at 502; see also Miller v. Raytheon Aircraft Co.,
229 S.W.3d 358, 375 (Tex. App.—Houston [1st Dist.] 2007, no pet.). When the
contract of employment is for a term, as opposed to at will, the employer has the
burden of showing good cause for the discharge. Lee-Wright, 840 S.W.2d at 578.
          Though the contract stated that the length of the assignment was one year, it
also unequivocally provided that the contract was terminable at will by either party. 
Abrams had the option of terminating McGee “without cause,” and McGee could
resign at any point with two weeks notice. Abrams also had the right to terminate the
contract if it determined McGee’s responsibilities were complete. A contract that
contains a stated term of employment but also contains an unambiguous voluntary
termination clause does not “unequivocally indicate” an intent to alter the at-will
employment relationship. See Brown, 965 S.W.2d at 502; see also Hussong, 896
S.W.2d at 324–25. Under the terms of the agreement, McGee was an at-will
employee of Abrams. The contract, therefore, was not breached by Abrams’s failure
to employ McGee for the entire year. See Hussong, 896 S.W.2d at 324.
B. Whether McGee’s Responsibilities were Complete
          McGee also asserts that the contract was not terminated in accordance with the
“Projection Completion” section of the agreement. The contract stated that Abrams
could terminate the agreement “upon completion of [McGee’s] responsibilities in
relation to the project . . . as determined by [Abrams] . . . .” In support of its motion
for summary judgment, Abrams provided an affidavit from Ted Abrams in which he
stated that he, as president of the company, determined that McGee’s responsibilities
with respect to the project in Aruba were completed as of January 2003. In response,
McGee offered two pieces of evidence: (1) his own deposition, in which he states that
he had not completed his projects before he left Aruba to travel to Honduras and
wanted to return to Aruba to work, and (2) Tolentino’s deposition in which Tolentino
states that he had no knowledge of whether McGee was terminated, that he had not
been able to contact Chuckaree regarding McGee, and that he did not receive another
request for a mechanical engineer for the Aruba project after September 2002.
          Because the contract specifically provided that Abrams was the party to
determine whether McGee’s “responsibilities in relation to the project” were
complete, McGee’s statement that he believed he had not completed his projects prior
to leaving Aruba is not relevant to the issue of whether the “Project Completion”
clause had been properly exercised. Additionally, McGee’s desire to return to work
in Aruba is not indicative of a breach by Abrams. The contract unambiguously
provides that whether McGee’s responsibilities were completed was to be determined
by Abrams alone. See GT & MC, Inc. v. Tex. City Ref., Inc., 822 S.W.2d 252, 255–56
(Tex. App.—Houston [1st Dist.] 1991, writ denied) (holding that contract is not
ambiguous if contract is worded so that it can be given definite meaning or
interpretation).
           McGee claims in his brief that Tolentino stated that McGee was not terminated
in accordance with the contract. However, that is not an accurate characterization of
Tolentino’s deposition. In his deposition, Tolentino stated that he had no knowledge
of whether a determination had been made by Abrams as to the completion of
McGee’s job responsibility and that he had never been involved in such
determinations. Contrary to McGee’s assertions, Tolentino does not state that McGee
was not terminated in accordance with the terms of the contract.
          Because the plain terms of the agreement allowed Abrams alone to determine
whether McGee’s work was complete, McGee’s belief about his work does not create
a fact issue. 
C. Whether Abrams Refused to Allow Him to Return to Aruba
          McGee contends that he presented evidence that Abrams breached the contract
because it refused to allow McGee to return to Aruba to complete his project. The
only evidence offered in support of this claim was McGee’s stated desire to return to
Aruba and Tolentino’s statement that he attempted, but was unable, to make contact
with Chuckaree after McGee left Aruba. Tolentino’s failure to get in touch with
Chuckaree, despite repeated attempts by email and telephone, is no evidence that
Abrams refused to allow McGee to return to Aruba. Cf. Dorsett, 106 S.W.3d at 217. 
Further, it is no evidence of breach because the plain terms of the agreement allowed
Abrams to let McGee go without cause or when Abrams determined McGee’s work
was complete. 
          We hold that McGee offered no more than a scintilla of evidence in support of
his breach of contract claim. See Mathis, 189 S.W.3d at 844. We overrule
appellant’s sole issue.

Conclusion
          We affirm the judgment of the trial court.
 

                                                             Elsa Alcala
                                                             Justice

Panel consists of Justices Taft, Keyes, and Alcala.