# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

June 9, 2010

No. 09-50730

Lyle W. Cayce
Clerk

VIRGINIA GALAVIZ,

Plaintiff - Appellant

v.

POST-NEWSWEEK STATIONS, SAN ANTONIO, INC., doing business as
KSAT/TV 12; POST-NEWSWEEK STATIONS, SAN ANTONIO, G.P.; POST-
NEWSWEEK STATIONS, SAN ANTONIO, L.P.,

Defendants - Appellees

Appeal from the United States District Court
for the Western District of Texas
USDC No. 5:08-CV-305

Before JOLLY, SMITH, and OWEN, Circuit Judges.

PER CURIAM:[*]

Vanessa Galaviz was a television news reporter for KSAT[1] in San Antonio,
Texas, until being fired after a domestic dispute that resulted in her arrest and
significant publicity.  She appeals the district court's grant of summary

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

[1] We refer to the defendants collectively under the station's call letters.

No. 09-50730

judgment in favor of KSAT on her claims of Title VII sex discrimination and breach of contract. We affirm.

I.

Since her hiring, Paragraph 8(a) of her contract, which we will call the morals clause, has read:

> If at any time Employee fails to conduct himself or herself with due regard to public morals and decency, or if Employee commits any act or becomes involved in any situation or occurrence tending to degrade Employee in the community or which brings Employee into public disrepute, contempt, or scandal, or which materially and adversely affects the reputation or business of [the station] or the standing of [the station] as a broadcast licensee, whether or not information in regard thereto becomes public, [the station] shall have the right to terminate the Agreement on twenty-four (24) hours notice to employee.

On August 1, 2007, KSAT fired Galaviz, relying on the morals clause, after she was involved in a domestic dispute.

The incident was her third during her time at KSAT.  The first was a July 2004 altercation with a San Antonio city councilman whom Galaviz dated.  The incident began with a fight that ended with the two throwing food at each other.  She began moving out the next day, though they had dinner that night.  On the way back from dinner, they got into a fight, after which Galaviz decided to go to bed at the councilman's home.  She says he later returned, pushed her, and pointed a gun at her, after which police responded to a call reporting a domestic disturbance.  The incident garnered news coverage, some of which questioned the ethics of a reporter having a romantic relationship with a city councilman.  No charges were filed against Galaviz, and she says the district attorney considered her the victim in the case.

The next incident occurred in early 2006, with a subsequent boyfriend.  Galaviz, it turns out, was not the only woman he was seeing.  In her deposition, Galaviz said the other woman was angry upon finding her at the shared

boyfriend's home and called the police. The other woman reported that Galaviz was drunk, had a gun, and had destroyed her vehicle. There was apparently no arrest.

The final incident—the one that immediately preceded Galaviz's firing—occurred on July 25, 2007, with her fiancé. After an altercation at a downtown San Antonio bar, she went home to discover that she had a black eye. She went to her fiancé's sister's home to show him her black eye. The fight resumed, police intervened, and both were arrested. Galaviz spent the night in a holding cell. Like the first incident and unlike the second, this event drew media attention, including video of Galaviz being led to the magistrate's office in handcuffs. At least some of the coverage identified Galaviz as a KSAT reporter and referred to the 2004 incident with the councilman.

KSAT's news director, who saw the television coverage the night before, met with Galaviz and the station's business manager and head of human resources, the next day. KSAT says they discussed counseling at that meeting and at another meeting several days later. On August 1, the news director gave Galaviz a letter, reading, "KSAT is terminating your employment contract effective immediately, pursuant to Paragraph 8(a) of the Talent Contract Clauses."

Galaviz sued, and the district court granted summary judgment for KSAT, which Galaviz now appeals.

## II.

Galaviz raises three objections. First, she says that the morals clause is ambiguous, creating a factual issue and precluding summary judgment. Second, she argues that the district court erred by concluding that no damages flowed from her immediate termination, in violation of the notice provision in the morals clause. Third, she says that she provided three similarly situated male employees who were sent to counseling instead of getting fired, making

summary judgment on the Title VII claim inappropriate. We reject all three arguments.

First, the morals clause, which allows termination for "becom[ing] involved in any situation . . . tending to degrade Employee in the community or which brings Employee into public disrepute, contempt, or scandal, . . . whether or not information in regard thereto becomes public," easily covers this case. In the third incident, Galaviz was arrested for domestic violence, and coverage of the event included footage of her in handcuffs.

Second, summary judgment was appropriate on the notice provision, because "when an employment contract requires a certain period of notice, the employment may be cancelled on shorter notice or upon none at all if the employee is paid wages or salary for the specified notice period." *Hussong v. Schwan's Sales Enters., Inc.*, 896 S.W.2d 320, 326 (Tex. App.–Houston 1995, no writ). We agree with the district court that no evidence suggests KSAT failed to meet its financial obligations.[2]

Third, Galaviz has failed to produce any similarly situated male employees required to show disparate treatment. She points to three who have previous arrests and were allowed to keep their jobs after counseling, but they are not "nearly identical," as required by our cases. *See, e.g.*, *Keelan v. Majesco Software, Inc.*, 407 F.3d 332, 345 (5th Cir. 2005). None had as many infractions, and none had a job so sensitive to misconduct as Galaviz's position on the police beat.

### III.

Galaviz has demonstrated no error in the district court's grant of summary judgment. The judgment of the district court is

AFFIRMED.

---

[2] Galaviz cannot show that she was entitled to severance or assistance in obtaining employment benefits under her contract, so KSAT's failure to provide either is irrelevant.